Ernest HERRERA et al., Plaintiffs-
Appellants,

v.

YELLOW FREIGHT SYSTEM, INC.,
et al., Defendants-Appellees.

No. 73–2254.

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1974.

---

33. Supplemental Brief for the United States Equal Employment Opportunity Commission as
 Amicus Curiae 4.

Ruben Montemayor, Harry A. Nass, Jr., San Antonio, Tex., for plaintiffs-appellants.

Theo F. Weiss, San Antonio, Tex., Paul Scott Kelly, Raymond F. Beagle, Jr., Kansas City, Mo., for Yellow Freight.

Edward W. Penshorn, Bradford F. Miller, San Antonio, Tex., for Local 657.

Hal K. Gillespie, G. William Baab, Dallas, Tex., for So. Conf. of Teamsters.

Before WISDOM, AINSWORTH and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

This is an action brought under Title VII of the Civil Rights Act of 1964 by three Mexican-American city drivers employed by the defendant Yellow Freight System, Inc. The plaintiffs contend that the company defendant's past discrimination in the hiring of road drivers has been perpetuated by the company's no-transfer policy and by the maintenance of separate seniority rosters for road and city drivers without provision for seniority carryover by the defendant unions. As a result of these policies, the plaintiffs argue, they have been discriminatorily "locked in" their city driver jobs without any realistic opportunity to transfer to a higher paying road job position. The district court found no discrimination. On the authority of Rodriguez v. East Texas Motor Freight, 5 Cir. 1974, 505 F.2d 40, decided today, we reverse.

In almost every respect this suit is a carbon copy of *Rodriguez,* except that *Rodriguez* was a class action while this is brought only on behalf of the individual plaintiffs. The plaintiffs here work as city drivers in Yellow Freight's San

Antonio terminal. Like East Texas Motor Freight, Yellow Freight domiciles no road drivers in San Antonio. Like East Texas Motor Freight, Yellow Freight's history of road-driver hiring is heavily tainted by discriminatory exclusion of minority drivers.[1] And like East Texas Motor Freight, Yellow Freight, and the unions, have hindered the transfer of city drivers to road driver jobs by a no-transfer policy and the maintenance of separate seniority rosters. This case was brought before the same district judge that heard *Rodriguez* a few days later. Similar to its finding in *Rodriguez*, the court found that none of the plaintiffs "could satisfy all the qualifications for a road driver position according to the company manual due to age or weight or driving record". The court concluded that "[t]he defendants did not discriminate against the plaintiffs or any other employee or Union member on the basis of race or otherwise".

■■ The defendants here advance many of the same arguments in support of the district court's conclusion that the defendants advanced in *Rodriguez*, and again we reject them. It is our considered view that the plaintiffs established a prima facie case of hiring discrimination perpetuated by the racially neutral no-transfer and no-seniority-carryover policies of Yellow Freight, Local 657, and the Southern Conference.[2] The discriminatory effect of these policies was not justified by a showing of business necessity. The district court's finding of no discrimination, therefore, is erroneous.

■ Because this is not a class action, we pause to amplify our discussion

in *Rodriguez* of McDonnell Douglas Corp. v. Green, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. In *McDonnell Douglas* the Court outlined the following test for a complainant in a Title VII action:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824. The defendants argue here that *McDonnell Douglas* must control. In *Rodriguez* we distinguished *McDonnell Douglas* on three grounds. Rodriguez was a class action; there was a history of hiring discrimination sufficient to make application for a road driving job a futile exercise; and the plaintiffs had been denied the opportunity to show that they were qualified to become road drivers, because they had not been given a road test. Although the instant case is not a class action, we are of the view that McDonnell Douglas is distinguishable on the other two grounds. Here there is a history of past hiring discrimination, and, as in *Rodriguez*, the plaintiffs had no opportunity to take a road test and thus to prove their qualifications.[3]

We reverse and remand to the district court for consideration of the remedy question in light of *Rodriguez*.

1. Yellow Freight responded to the plaintiffs' interrogatories by stating that it employed 50 line drivers at Dallas and 46 line drivers at Amarillo. Yellow Freight employed no Mexican-American line drivers at either terminal until after the complaint was filed in this suit.

2. Because the separate seniority lists originate at the Southern Conference level, we

find no violation of Title VII by the defendant Teamsters International.

3. Jim Norman, road operations manager for Yellow Freight at its Baxter Springs, Kansas, terminal, testified that he would consider a line driver qualified only after personally testing the driver in the equipment and checking his knowledge of safety requirements.