Patrick RESENDIS, Tony Escobedo, Wilburn White, Arturo Rodriguez and Elias Gonzales, Plaintiffs-Appellants,

v.

LEE WAY MOTOR FREIGHT, INC., et al., Defendants-Appellees.

No. 73–2322.

United States Court of Appeals, Fifth Circuit.

Nov. 25, 1974.

Ruben Montemayor, Harry A. Nass, Jr., San Antonio, Tex., for plaintiffs-appellants.

Theo F. Weiss, San Antonio, Tex., Paul Scott Kelly, Jr., Raymond F. Beagle, Jr., Kansas City, Mo., for Lee Way.

Edward W. Penshorn, Bradford F. Miller, San Antonio, Tex., for Local 657.

G. William Baab, Hal K. Gillespie, L. N. D. Wells, Jr., Dallas, Tex., for Southern Conference.

Before WISDOM, AINSWORTH and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

Like its companion Title VII cases, Rodriguez v. East Texas Motor Freight, 5 Cir. 1974, 505 F.2d 40, and Herrera v. Yellow Freight System, Inc., 5 Cir. 1974, 505 F.2d 66, this appeal involves claims of discrimination in the exclusion of minority persons from the sought-after road driving jobs in the trucking industry. Plaintiffs Resendis, Escobedo, and Gonzales are Mexican-American city drivers for Lee Way Motor Freight, Inc. in San Antonio, Texas. Plaintiff Rodriguez was formerly a regular over-the-road driver in San Antonio for Lee Way, but was discharged after four and one-half years as a line driver. Plaintiff White is a Negro "casual" city driver for Lee Way in San Antonio.[1] The same district judge who decided *Rodriguez* and *Herrera* found that the plaintiffs had failed to prove a case of discrimination against any of the defendants under Title VII. We affirm in part and reverse in part and remand.

Prior to January 1, 1966, Lee Way domiciled only city drivers in San

---

1. "Casual" drivers have no seniority. They are not required to work only for one company, but may take jobs as casuals with a number of trading companies in the area.

Antonio. At that time, Lee Way acquired three-fourths of the assets of Texas-Arizona Motor Freight, Inc., which included an over-the-road terminal in San Antonio. Upon the acquisition, the 25 or 30 white/anglo road drivers domiciled there became the employees of Lee Way. Since then, Lee Way has hired approximately six white/anglo line drivers, and one Mexican-American line driver at the San Antonio terminal. The sole Mexican-American road driver is the plaintiff-appellant Antonio Rodriguez, who was discharged in 1972. Lee Way has never employed a Negro line driver in San Antonio. Of 44 city drivers for Lee Way in San Antonio, 26 or 28 are Mexican-American, four are black, and the remainder are white/anglo. Especially in light of the contrast in the percentage of minority employees between Lee Way's city and road driving fleets, we hold that these statistics establish a prima facie case of discrimination in the past hiring of road drivers.

 This discrimination has been continued by Lee Way's no-transfer policy, and by the maintenance of separate seniority rosters through the action of Lee Way, Local 657, and the Southern Conference.[2] Lee Way abandoned its no-transfer policy in 1971, but the perpetuation of past hiring discrimination was continued through the refusal of the defendants to permit minority city drivers to carry over their competitive status seniority to road driver jobs.[3]

██ The prima facie case of employment discrimination by Lee Way, the Southern Conference, and Local 657

against Resendis, Escobedo, and Gonzales has not been effectively answered.[4] We reverse the lower court's judgment with regard to these plaintiffs, and remand for consideration of the appropriate remedy in accordance with our opinion in *Rodriguez*. The district court should require that Lee Way consider these plaintiffs for road driver positions as vacancies occur, and the court should supervise closely the standards used by Lee Way in determining whether the drivers qualify for transfer. If any of the plaintiffs qualifies for a road driver position,[5] he should be awarded seniority carryover based on a "qualification-date" formula. See Bing v. Roadway Express, Inc., 5 Cir. 1973, 485 F.2d 441, 451. That Lee Way did not acquire a road driver terminal in San Antonio until 1966 is irrelevant to the proper computation of seniority. No hardship will be inflicted upon Lee Way or the union defendants by adjusting the plaintiffs' seniority to dates prior to the time Lee Way domiciled road drivers in San Antonio. To the extent that returning these drivers to their "rightful place" works a hardship at all, it will work it on those white drivers for Lee Way who will find their seniority expectations altered. But, as the Court said in United States v. Bethlehem Steel Corp., 2 Cir. 1971, 446 F.2d 652, 663: "Assuming *arguendo* that the expectations of some employees will not be met, their hopes arise from an illegal system. Moreover, their seniority advantages are not indefeasibly vested rights but mere expectations derived from a bargaining agreement subject to modification." See also Vogler v. McCarthy, Inc., 5 Cir. 1971,

2. We find no violation of Title VII by the defendant Teamsters International. See Herrera v. Yellow Freight System, Inc., 5 Cir. 1974, 505 F.2d 66, n. 2.

3. The operation of no-transfer policies and separate seniority rosters is fully described in Rodriguez v. East Texas Motor Freight, 5 Cir. 1974, 505 F.2d 40.

4. William Blood, Director of Personnel for Lee Way testified that the company had undertaken recently an affirmative action program to increase its hiring of minority road

drivers. While we find this program commendable, it does not excuse either Lee Way's past record or its present practices with regard to minority city drivers locked into their jobs by their inability to transfer seniority. See Rowe v. General Motors Corp., 5 Cir. 1972, 457 F.2d 348, 356.

5. We note that John Reaves, terminal manager for Lee Way in San Antonio, testified that in his opinion Resendis is qualified as a road driver and that Gonzales "could probably qualify" as a road driver.

451 F.2d 1236, 1238–1239. If Resendis, Escobedo, or Gonzales proves qualified to transfer to the road, he should be awarded back pay. See Pettway v. American Cast Iron Pipe Co., 5 Cir. 1974, 494 F.2d 211, 251–263; Johnson v. Goodyear Tire & Rubber Co., 5 Cir. 1974, 491 F.2d 1364, 1376–1380; Bing v. Roadway Express, Inc., 485 F.2d at 452–455.

 Arturo Rodriguez served as a line driver for Lee Way in San Antonio until he was fired on October 29, 1972. The district court found that Lee Way discharged Rodriguez "because of a poor driving record involving at least two accidents within the one year period immediately preceding his dismissal." Rodriguez's dismissal was upheld through union grievance procedures. He introduced no convincing evidence at trial that his dismissal was in any way improper. We conclude that the district court's finding of no discrimination in Rodriguez's dismissal is supported in the record.

 Nor can we disagree with the district court's finding that Wilburn White failed to prove a case of discrimination against him by any of the defendants. White began working as a city driver in a "casual" status in 1967. He complains that Lee Way has refused to accord him "regular" status because he is a Negro. But in 1967, when White first began driving for Lee Way, there were four Negro city drivers on "regular" status. Since 1967 Lee Way has hired seven regular city drivers—four

Mexican-American, one anglo, and two Negro. These statistics establish no prima facie case of discrimination against blacks by Lee Way in its hiring of city drivers in San Antonio.[6] Moreover, there was testimony at trial that White had suffered in the past from an "attitude problem." Although there was also testimony that White's attitude had improved, this factor alone provides an insufficient basis to doubt the correctness of the district court's finding that none of the defendants discriminated against White.[7]

Affirmed in part; reversed in part, and remanded.

---

6. Compare Rodriguez v. East Texas Motor Freight, 5 Cir. 1974, 505 F.2d 40 and the cases cited there, 505 F.2d at 54 and n. 17.

7. Even White himself seems unsure that his inability to obtain a regular city driving job is the result of racial, rather than personal, animus. The following colloquy took place at trial during White's cross-examination:

Q. Now, have you ever told Mr. Shafer down at the Union that Lee Way has been discriminating against you personally?

A. Yes, sir.

Q. And did you tell him that the way you felt they were discriminating against

and was because they weren't giving you as an individual a job?

A. As an individual?

Q. Yes, sir, give you, Wilburn White, a job.

A. Yes, I told him that they could have given me more work. They could give me more work but they wasn't doing it.

Q. You have never complained to Mr. Shafer of the Union about Lee Way discriminating against Negroes as a race, have you?

A. No, sir.

Q. Just against you personally?

A. Yes, but I am a Negro.