Charles JAMERSON, and all others
similarly situated, Plaintiff,

v.

The BOARD OF TRUSTEES OF the UNIVERSITY OF ALABAMA, a corporation
a/k/a the Board of Trustees of the University of Alabama in Birmingham, Alabama, a corporation, Defendant.

Civ. A. No. 77–G–0961–S.

United States District Court,
N. D. Alabama, S. D.

Dec. 29, 1978.

Demetrius C. Newton, Newton & Tucker, Birmingham, Ala., for plaintiff.

Ina B. Leonard, Gene R. Smitherman, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

This is a suit brought under 42 U.S.C. § 2000e, *et seq.*, to redress alleged acts of discrimination in employment. Plaintiff, Charles Jamerson, is a black male with no college degree, hired by defendant, The University of Alabama in Birmingham (UAB), to instruct the labor sector via defendant's Center for Labor Education and Research (CLEAR), under the auspices of defendant's School of Business. Plaintiff was hired without tenure. He later sought and was denied tenure and salary increase. Thereafter he was not reappointed to his position by the defendant, and this suit resulted.

This matter came before the court on the issue of certifying the plaintiff as a class representative. In his complaint, plaintiff purports to represent, under Rule 23(b)(2) of the Federal Rules of Civil Procedure, a class composed of all past or future black applicants for academic positions with the defendant, as well as all blacks denied tenure by the defendant. No motion for class certification was made. At the hearing, plaintiff proposed to prove a class composed of Business School employees and applicants at its narrowest, or of University College employees and applicants at its broadest. Another allegation of class membership by victims of sex discrimination was withdrawn.

Plaintiff rested his presentation upon the pleadings and certain documentary evidence, his charge and amended charge as filed with the Equal Employment Opportunity Commission (EEOC), his deposition, and the defendant's answers to plaintiff's interrogatories. Defendant proffered the testimony of two witnesses. Counsel for both parties have submitted post-hearing briefs. Having considered all the foregoing as well as the law applicable to this controversy, the court is of the opinion that plaintiff's request for certification as a class representative is due to be denied and that this matter should proceed to trial on the merits as an individual action.

Much discussion has been had over the supposition of the inherent class nature of discrimination suits. Particularly in this circuit, an "across the board" or "broad brush" approach to such matters has been touted. Its adherence would follow the rubric that incidents of race discrimination present questions that necessarily embrace whole masses of people. On this rationale class actions in discrimination suits are quickly endorsed. *See e. g., Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969); *Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895 (5th Cir.

1978); *Hebert v. Monsanto Company, Texas City, Texas*, 576 F.2d 77 (5th Cir. 1978).

The fallacy of this approach is that it begs the question of compliance with the requirements of Rule 23, Federal Rules of Civil Procedure, in Title VII cases. This presumptive attitude allows no evaluation of the individual's claim as to the suitability of the class method. A bare assertion of discrimination and an averment of class status thus would propel any litigation into a class action. Whenever requested, all suits brought under Title VII, therefore, would have to be accorded class status. Clearly such unquestioning acceptance of the Title VII plaintiff's contentions can only result in judicial wastefulness and emasculate the Rule in discrimination suits.

The Supreme Court has found the weight of reason to repose elsewhere:

> We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable. The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination.

*East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 405–406, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977).

In light of the Supreme Court's expressions in *Rodriguez*, a pragmatic evaluation of any class claim is in order, no matter what may be the substance of the suit. This court, then, is bound to proceed so to assess the class question at hand, in view of the guidelines set out in Rule 23(a). In Title VII cases in particular the inquiry as to class claims necessarily subsumes some reflection on the merits of the case, and that fact, at least in part, may explain the reluctance of some courts to scrutinize class claims under Title VII and their quickness to certify them instead. But as to the class issue, the first question is whether others exist who are similarly situated and who may pose the same or similar questions as their self-proclaimed representative. Thus the scope of this study is limited to determining whether there are others like the named plaintiff and whether the class method suits the action. This much is demanded by Rule 23(a) and has been reemphasized by the Supreme Court in *Rodriguez*. It becomes increasingly obvious from the facts that the plaintiff is uniquely situated. Thus he may not represent all blacks involved with the defendant University, but only himself.

Rule 23(a) requires the presence of four factors before a class action can be certified. These are threshold requirements but they do not pose easy questions for the trial court. It bears noting from the outset that there is no exactitude in the law here, and no one meaning has been agreed upon as to the Rule 23(a)(2) and (3) provisions in particular. "Common" and "typical" are difficult terms to work with, and often the two are simply taken as one. This court, however, chooses not to roil the waters further, but will endeavor to segregate and to divine independent meanings for subsections (a)(2) and (a)(3).

Attending first to questions raised under 23(a)(2), it must be shown that "there are questions of law or fact common to the class." This requirement has not been met in this case, and likely cannot be. What is before the court is not a typical employer-employee relationship. On the contrary, the court is confronted with an action involving the academic world and all its concomitant peculiarities. In a college or university, employment decisions involve questions that must be decided on an individual basis. As for suits brought to redress alleged discriminatory practices underlying these decisions, "it is clear that the issues of fact common to the alleged class members would not predominate over individual issues." *O'Connell v. Teachers College, Columbia University*, 63 F.R.D. 638, 639 (S.D. N.Y.1974). The class action there was rejected as being an untidy device where so many diverse inquiries must be made.

The situation at the defendant University cannot be distinguished from *O'Connell* except that these facts are more bizarre. Defendant's faculty has been accorded much independence, so as to foster academic freedom. The evidence showed that employment decisions are not made on a broad institutional basis, but rather are promulgated by much narrower units within the University. Most decisions are made on a departmental basis, and little input is had even at the School level.

The plaintiff claims to represent all blacks holding or applying for academic positions at the defendant University, past, present and future. But he has not shown, nor can he show, any commonality of facts which would tie together all blacks and all Schools at the University. Obviously there would be some common facts, that the plaintiffs are black and that they work for the defendant. But each unfavorable employment decision would also present a set of facts which would differ with every plaintiff and job concerned. Judgments are passed on each teacher's case first within the department involved. Under defendant's peer review and evaluation methods, the real arbiters for any faculty member are his colleagues, not the University itself. The only group with which plaintiff could show kindred facts would be those within his School, as to whom the treatment would be at least vaguely similar.

Even within the School of Business, however, the unusual attributes of plaintiff's department would deny any factual commonality with blacks in other departments. The plaintiff was given the title of Associate Professor, yet he was not a member of the faculty for the School of Business, but rather for the Center for Labor Education and Research (CLEAR). Significant distinctions stand out between CLEAR and the regular School of Business. One relates to the credentials sought after for CLEAR faculty. Only in the CLEAR program are there any instructors on the defendant's payroll who lack at least one post-baccalaureate degree. At the time plaintiff was hired, he and others in CLEAR had no college degree of any kind. Furthermore,

the CLEAR faculty is involved in the labor movement, and draw their qualifications from that involvement. Their function is not to teach college students, but only to meet one important need, the education of labor. The instructors sought after by CLEAR were and are persons with labor experience and an ability to relate to laborers generally. For the purposes of the CLEAR program, such a background is more important than any educational qualifications. The special orientation of the CLEAR program is further indicated by its status as a "soft-money" undertaking, funded by grants and not supported directly by the defendant. It is plain to the court from the evidence that the extraordinary circumstances of the CLEAR group separate them from the rest of the School of Business.

The *Rodriguez* decision forbade unquestioning certification of the "across the board" class. On other facts than those now before the court, however, it could perhaps still be said that race, the sole characteristic shared by the putative class, would be enough to provide commonality. The Fifth Circuit has held that membership in a class which is the victim of a racially discriminatory policy is all that is necessary to be shown in order to represent that class, despite factually divergent practices implementing the policy. *Payne v. Travenol Laboratories, Inc., supra.* In that case, though, there was less of an individual inquiry to be made than in the instant case with each hiring, tenure, or discharge decision. These decisions, moreover, were made by the company as a whole in *Payne* and were not departmentalized as they are at the defendant University. Finally, in *Payne* plaintiffs were able to point to and the trial court found an affirmative policy of racial discrimination at work.

Plaintiff Jamerson by contrast has not shown the existence of any such policy on behalf of the defendant which could pervade the widely divergent practices of the various departments and schools at UAB. The most crucial of all the documents which the plaintiff put into evidence were his own deposition and defendant's answers to inter-

rogatories. Nowhere in either was there shown any more than the plaintiff's own vague suspicions of racial inequality at UAB. He asserted no statistics in support of his charge and he pointed to actual mistreatment of no one other than himself. This indicates to the court that the facts undermine the allegations plaintiff makes regarding the existence of such a policy at UAB. He has not met even the "common policy" test under Rule 23(a)(2), as set out in *Payne*.

■ The term "nexus" lamentably has been used in the confusion of Rule 23(a)(2) with 23(a)(3). Nevertheless, it has value in assessing this case. As this circuit has held, "[o]ne may not represent a class of which he is not a part." *Wells v. Ramsay, Scarlett & Co., Inc.*, 506 F.2d 436, 437–38 (5th Cir. 1975). There a black supervisor was denied representative status where the class whose interests he sought to champion was made up of the longshoremen whom he oversaw. Though the would-be class members were also black, no other similarities could be found, and "nexus" was lacking. The court defined "nexus" to mean "a tying or binding together, a fastening, joining, an interlacing, entwining, clasping." 506 F.2d at 437, n. 3. Just as race was not enough to link factually disparate individuals in that case, this court finds it insufficient here. The considerations involved regarding the plaintiff's employment, his qualifications and the like, would be unlike those involved with any other faculty member. He shares no factual foundation with any other member of the putative class, except race. For all these reasons, the court finds that plaintiff has not shown any compliance with the requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure.

■ The *Wells* decision is exemplary of the welter that has come about regarding Rule 23(a)(2) and (3). Though quite sound in principle, the nexus rule would have the court evaluate the class and the aspiring representative together. In the present case, at least, a bifurcated scrutiny seems the sounder arrangement. It has been suggested that Rule 23(a)(3) can have significance only if it is distinguished from Rule 23(a)(2). Professor Moore points to a logical distinction, that subsection (a)(2) speaks to the proposed class and (a)(3) to its prospective representative:

> Subpart (a)(2) focuses on "WHAT ARE THE CLAIMS OF THE CLASS" and requires a commonality of relationship between these claims. Assuming (a)(1) and (a)(2) are met, subpart (a)(3) now looks to the question "WHAT IS THE INDIVIDUAL CLAIM OF THE CLASS REPRESENTATIVE" and requires that it have the essential characteristics common to the claims of the class.

3B Moore's *Federal Practice* ¶ 23.06–2. Indeed, analysis of the language of the rule can lead to no other conclusion. Subsection (a)(2) only refers to common questions of the *class*; subsection (a)(3) connects the representative to the class, and demands that his claims or defenses typify those of the larger body. Thus the court initially must make a summary assessment of the substance of the plaintiff's suit before it can decide whether the class can be certified.

Rule 23(a)(3) requires proof that "the claims . . . of the representative parties are typical of the claims . . . of the class." The use of the term "typical" may have been unfortunate for its ambiguity. It has certainly made for much confusion in the cases. Doubtless, however, the rules makers envisioned a need to invoke this condition, and the court finds it especially apt in this case. Class certification is due to be denied here for the additional reason, separate and apart from the lack of commonality, that plaintiff has not shown the necessary typicality of his claim in relationship to the putative claims of the class.

The typicality requirement has not enjoyed uniform treatment by the courts. It has been ignored by some, *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2nd Cir. 1968), and subsumed by others in discussions of commonality and adequacy of representation. Seldom has 23(a)(3) been given any independent meaning at all. *See*, generally, 3B Moore's *Federal Practice* ¶ 23.06–2; 7

Wright and Miller *Federal Practice and Procedure* § 1764. The breadth of the term and its divergent treatment among the courts have prompted at least one remark upon the redundancy of the typicality provision:

> In fact, there is no need for this clause, since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23.

3B Moore's *Federal Practice* ¶ 23.06–2 at 23–185.

■ It is the court's opinion that Professor Moore errs in this self-contradictory[1] declaration. It flies in the face of all the principles of sound construction. Proper interpretation of the rule, as with any statute, should determine and accord to its provisions whatever meaning the drafters intended. The court must eschew a finding of surplusage where possible. The provisions of today's subsection (a)(3) were added in the 1966 revision of Rule 23, and it would not befit this court to engage in second-guessing the rules makers at this time. Rather, their foresight should be applauded. This action, for one, illustrates that not in every case where class allegations are made is there a class to be found. Nor is the self-proclaimed plaintiff always in similar straits as the proposed class.

■ The first question subsection (a)(3) poses would appear to be whether there actually exist any other persons with comparable claims or defenses. It has been so interpreted by a number of other courts, many following the thinking, if not the words, of *White v. Gates Rubber Co.*, 53 F.R.D. 412 (D.Col.1971). Faced with a class allegation in a Title VII setting, the court there disdained the "across the board" approach of the Fifth Circuit, while at the same time avoiding the obfuscatory treatment of Rule 23(a)(3) others had fallen prone to:

> It should be apparent that treating the requirement as identical to those of common question or adequate representation

renders the requirement meaningless. It is difficult to accept the conclusion, which must follow from any of these readings, that the requirement serves no independent purpose. A more reasonable reading of the requirement would seem to entail the necessity of demonstrating that there are other members of the class who have the same or similar grievances as the plaintiff. It seems apparent that a claim cannot be typical of the claims of a class if no other member of the class feels aggrieved.

53 F.R.D. at 415. The court went on to state what it felt to be the purpose of Rule 23(a)(3), "an attempt to assure that there is in fact a class needing representation." 53 F.R.D. at 415.

Perhaps because the cases are not legion which have dealt with the typicality requirement with clarity, *White* has hardly founded a monolith of case precedent on this question. Several decisions, however, have followed or approved its rationale. The Tenth Circuit endorsed the rule in *White* and applied it in lieu of the "across the board" approach in a factually similar case, *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir. 1975). In both this case and that, moreover, the employment decisions in question were being made on a fragmented basis. In *Taylor*, each of the individual stores did its own personnel work; here those matters are separately handled by the several departments or schools. Sweeping allegations of discriminatory treatment as a device to sidestep Rule 23(a)(3) would not wash:

> If the mere assertion of widespread employment discrimination were sufficient to satisfy the typicality requirement, subsection (a)(3) would again be rendered superfluous, since it would be unrealistic for a court to compare the claims and defenses of the plaintiff with the hypothetical claims of a hypothetical class.

524 F.2d at 270–71. The plaintiff in *Taylor* could isolate no policy of discrimination nor

---

1. This opinion quotes Professor Moore twice from ¶ 23.06–2. The two statements quoted are totally contradictory.

any similarly aggrieved employee, and his burden under Rule 23(a)(3) was adjudged to have been unmet.

The Eighth Circuit arrived at that very conclusion independently where a would-be class representative failed in the same fashion. *Wright v. Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975). In *Wright*, the court prefaced its findings by acknowledging its commitment "to the proposition that Rule 23 should be liberally construed to effectuate the remedial policy of Title VII," 524 F.2d at 1061–62, a goal to which this court is also dedicated. Nevertheless, the plaintiff's speculative account and "vague references" were deemed insufficient under the rule. Here, where plaintiff Jamerson has presented only his own conjecture and proved the existence of neither a discriminatory policy nor its victims, the burden more conspicuously has not been carried. *See,* also, *Steffin v. First Charter Financial Corp.*, 77 F.R.D. 498 (C.D.Calif.1978).

The second phase of the typicality showing, once the existence of a class has been shown, asks that the claims and defenses of the individual be compared to those of the group. This was the effect of the ruling in *Taylor,* and this was the undercurrent of a recent case where the Fifth Circuit also affirmed the refusal to certify a class action. *Smith v. Liberty Mutual Insurance Co.*, 569 F.2d 325 (5th Cir. 1978). The plaintiff in *Smith* charged class-wide race and sex discrimination but failed to support the allegation with any proof. The Court of Appeals recited with approval that part of the order entered by the trial court which dealt with typicality:

> To be typical, other members of the class should have same or similar grievances. *See, White v. Gates Rubber Co.*, 53 F.R.D. 412, 415 (D.Col.1972). Plaintiff has not demonstrated to this court that there are other members of the class who have same or similar grievances. Plaintiff has alleged a single act of discrimination by defendant. He has done nothing more than make a conclusory allegation that

defendant has discriminated against other members of the purported class.

569 F.2d at 329, n. 7. It should be noted that plaintiff there was a black male who had amended his original race discrimination charge to bring a second allegation of sex discrimination.[2] Still, he saw fit to prove the existence of a class under neither theory. The plaintiff's evidentiary shortcomings destroyed his Rule 23(a)(3) underpinnings. The implication of the *Smith* holding is clear. Although the plaintiff had failed to establish that a class even existed, his own queer circumstances would hardly make him typical of a group asserting a race discrimination cause of action. Unquestionably, his sexual preferences, and not his race, would predominate in his action. Much in the same fashion, the personal qualifications of the plaintiff and the criteria for his individual job will be the key to the current suit on its merits.

In common parlance, to be typical means to be alike, similar, or representative. Recognizing that race discrimination would be a recurring theme throughout, nevertheless the plaintiff's suit cannot be made out to typify that of the proposed class. Academic employment decisions are made on an atomistic basis as a matter of course. Each individual and his or her qualifications must be compared with the job criteria at hand. When the claims and defenses are brought out on the merits in this case, the emphasis will necessarily be placed upon the legitimacy of the defendant's decisions. This will in turn require an assessment by the court of his qualifications vis-a-vis his job and the determinations made by the defendant not to grant him tenure, not to raise his salary, and not to retain his services.

It should be remembered that Mr. Jamerson was a *rara avis* on the defendant's faculty. He had a unique mission and his qualifications were peculiar to that objective. He had no college degree, yet he was an associate professor. Unlike at least some of the applicants, he was hired; unlike many who were hired, he was not tenured.

---

**2.** The evidence showed, however, that the man was not hired because he was effeminate, a type of sex discrimination which did not sound under Title VII.

The plaintiff would be atypical of either group to whom he is dissimilar. It is patent that to allow this plaintiff to represent other black faculty members with different credentials and different jobs would be to their disadvantage.

Plaintiff Jamerson has shown the court nothing to substantiate his conjecture, no policy of discrimination, no practice of discrimination, no fellow victims of discrimination. He has certainly not shown the typicality of his claims and the related defenses. If he is typical of anyone, it could only be of blacks without college degrees hired within the CLEAR program.[3] This is not to hold classes in general to be limited to those who share identical fact situations. Rather, the court holds that where the would-be representative brings into the controversy considerations unique to that individual, which may be conclusive as well, such a plaintiff is not typical and cannot be certified as a class representative. To do so would not do justice to the class itself.

This court, as the Supreme Court has said it should, has examined the plaintiff for having met the requirements of the rule, on the issue of class certification. The court finds this plaintiff and his case to be uncommon and atypical in posture. Only among those who have been hired by the defendant in the same department and same school can similar questions of fact be found. The plaintiff can be related only to those who were employed in the CLEAR program, who are black, who lack college degrees, and who have not been granted tenure. In other words, there can be no broad class, contrary to the plaintiff's assertions, for lack of common questions under Rule 23(a)(2). Moreover, all the evidence leads to the conclusion that the plaintiff is unique, and cannot fairly be certified to represent the narrow class he claims. Nor has he shown that there indeed does exist a class he could represent, so he fails to meet his burden under Rule 23(a)(3).

It may be noted in conclusion that by having failed wholly in supporting his claims or even finding other victims of the purported discriminatory treatment, plaintiff has hardly shown himself to be an adequate class representative.

Accordingly, class certification shall be denied.

A separate order in conformity herewith is contemporaneously entered.

---

**3.** Thus limited, the plaintiff's class encounters the hurdle of numerosity, one which it cannot surmount: the evidence showed the plaintiff to be the only person so situated.