Rufus **HARRIS, Jr., Bobby Minard, and George C. Moore, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**BIRMINGHAM BOARD OF EDUCATION, Defendant.**

**Civ. A. No. CV 76–G–1725–S.**

United States District Court, N. D. Alabama, S. D.

Feb. 27, 1981.

**264**

Robert L. Wiggins, Jr., Wiggins & Quinn, Birmingham, Ala., for plaintiffs.

Harry L. Hopkins and William G. Somerville, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant.

MEMORANDUM OPINION

GUIN, District Judge.

This action came before the court on September 16, 1980, to determine whether the plaintiffs, George C. Moore, Rufus Harris, Jr., and Bobby Minard, satisfy the requirements of Rule 23, Federal Rules of Civil Procedure, to maintain a class action as representatives of a class. In the complaint, the plaintiffs purport to represent a class composed of "all past, present and future black applicants for employment or black employees of the Birmingham Board of Education and on behalf of those persons in the past, present or future who would have applied for employment but for the defendants' racially discriminatory recruitment and employment practices and reputation therefor." No formal motion for class certification has been made. However, in plaintiffs' initial memorandum in support of class certification plaintiffs' counsel states the class seeking certification is composed of "black employees and former employees assigned to physical education or athletic coaching positions since March 1972." This court finds for alternative reasons that whichever proposed class definition is advocated, class certification is due to be denied.

■ First of all, and most importantly, in this case the putative class constitutes a subclass in *Dwight Armstrong v. Board of*

*Education of the City of Birmingham*, 430 F.Supp. 595, D.C., (commonly referred to as "the Birmingham School Case"). During the years of litigating the *Armstrong* case no request to intervene as a part of the subclass was ever made by counsel for the plaintiffs herein, although said counsel repeatedly admitted knowledge of the proceedings in *Armstrong*. In addition, there was certainly adequate publicity of *Armstrong* in the news media. The *Armstrong* case was by its nature a class action and by virtue of the court order of June 19, 1970, based on the mandate of the Fifth Circuit Court of Appeals, the adoption of the desegregation plan of faculty and staff as set forth in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 at 1218 (1969), was required in order to achieve a unitary school system for the Birmingham schools. With regard to faculty ratios, the *Armstrong* case is in the final decree stage and intervention is no longer appropriate. The only aspect left in the pending *Armstrong* case is the achievement of certain *student* ratio goals. All class issues involving faculty are fully resolved.

Under the decrees of this court, great progress has been made by black faculty members and administrative employees. For example, by order of the court dated August 9, 1979, no elementary school or high school with a student enrollment exceeding 50 percent black students shall have a percentage of black teachers which exceeds the percentage of black elementary or high school teachers in the system as a whole in such year by over ten percentage points. The same was ordered with regard to white teachers at elementary schools and high schools with student enrollments which exceed 50 percent white. Under the 1970 order aforementioned, the Birmingham Board of Education is obligated to avoid racial considerations in *all* faculty hiring and assignment. The appropriate vehicle for the faculty claims presented in this case is not a separate class action, but a complaint in intervention timely filed in the *Armstrong* case.

The Fifth Circuit said in *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044 (5th Cir. 1975) that where the Singleton unitary plan is adopted (as it was in *Armstrong*)

> [T]his court held that the proper and orderly procedure to be followed by third parties in seeking to question deficiencies in the implementation of desegregation orders or for further relief in ongoing school cases is by petition to intervene.

*Id.* at 1046. See also *Hines v. Rapides Parish School Board*, 479 F.2d 762 (5th Cir. 1973) and *Lee v. Macon County Board of Education (Conecuh County)*, 482 F.2d 1253 (5th Cir. 1973).

> Intervention will serve to avoid a proliferation of litigation over the same subject matter, and is within the spirit of Rule 24(b), F.R.Civ.P. The same reasoning, which supported our prior decisions requiring intervention, is supportive of requiring that a Title VII plaintiff-school employee likewise intervene. Lastly, our policy of required intervention is analogous to the discretionary power in the court to require consolidation. See Rule 42(a) F.R.Civ.P.

*Id.* at 1049, footnotes omitted.

Alternatively, Rule 23(a) of the Federal Rules of Civil Procedure requires the presence of four factors before a class action can be certified:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

The adequate representation requirement of Rule 23(a)(4) is typically construed to foreclose the class action not only where the representative parties lack competent counsel, but also where there is a conflict of interest between the named plaintiffs and the members of the putative class. *General Telephone Co. v. EEOC*, 446

U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The facts of this case present such a conflict of interest between the class members and their representatives. The complaint includes within the class all black employees of defendant Birmingham Board of Education. Yet the Supreme Court recently, in *General Telephone Co., supra,* at 446 U.S. 331, at 100 S.Ct. 1707, at 64 L.Ed.2d 330, stated as dictum the following:

> In employment discrimination litigation, conflicts might arise, for example, between employees and applicants who were denied employment and who will, if granted relief, compete with employees for fringe benefits or seniority. Under Rule 23, the same plaintiff could not represent these classes.

In their complaint, plaintiffs prayed that the class members be offered the opportunity to qualify for and transfer into positions from which they had been excluded, with carry-over seniority and their benefits. It is obvious from the language of the Supreme Court that a conflict does exist between the employed coaches of the Birmingham Board of Education and those who were denied employment. Furthermore, if one assumes, as one must if the typicality requirement is met, that the three individual plaintiffs desire to be transferred to coaching positions at historically white schools, and if one assumes that the numerosity requirement has been met, then a great many class members are seeking a small number of jobs. If the three individual plaintiffs get what they seek, then unnamed class members are, ipso facto, precluded from getting what they seek. This is the same type of fundamental conflict which the Supreme Court says precludes an individual plaintiff from representing a class. In addition, since plaintiffs seek to represent both head coaches and assistant coaches in the same class, an inevitable conflict would occur as to who would be an assistant coach and who a head coach. See *Arnett v. American National Red Cross,* 78 F.R.D. 73, 75 (D.D.C.1978); *Lo Re v. Chase Manhattan Corp.,* 431 F.Supp. 189, 198 (S.D.N.Y.1977). Certainly it is very much contrary to human nature to support those individuals who may in fact deprive you of your job. There is a definite conflict between the named plaintiffs and the members of the class they wish to represent.

Further alternatively, Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. It is important to note that while subsection (a)(2) speaks to the proposed class, subsection (a)(3) speaks to its prospective representative who is required to have the essential characteristics common to the claims of the class. *Jamerson v. Board of Trustees of the University of Alabama,* 80 F.R.D. 744, 748 (N.D.Ala.1978). Subsection (a)(3) connects the representative to the class and demands that his claims or defenses typify those of the larger body. *Id.*

■ Plaintiffs argue that their individual claims need not be identical to those of every other class member. Although so-called "across the board" attacks on discrimination are permitted by the Fifth Circuit, *see Falcon v. General Tel. Co. of Southwest,* 626 F.2d 369 (5th Cir. 1980), the Supreme Court in *Rodriguez, supra,* forbade unquestioning certification of the "across the board" class. *Jamerson, supra* at 747. Careful attention to the requirements of Rule 23 remains indispensable. *Rodriguez, supra,* 431 U.S. at 405, 97 S.Ct. at 1897, 52 L.Ed.2d at 463. The fact that plaintiffs are of the same race as the other employees and rejected job applicants whom they seek to represent is not enough in itself to *require* a finding under Rule 23 that their claims were typical of the class. *See Rodriguez, supra; Crawford v. Western Elec. Co. Inc.,* 614 F.2d 1300 (5th Cir. 1980). The Fifth Circuit has held, however, that membership in a class which is the victim of a racially discriminatory policy *can* be all that is necessary to be shown in order to represent that class, despite factually divergent practices implementing that policy. *See Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895 (5th Cir. 1978); *Jamerson, supra.*

In *Payne,* the court held that plaintiffs could represent other class members suffer-

ing from different discriminatory employment practices motivated by the same policies of defendant company. *Id.* at 900. This court in *Jamerson*, however, in denying class certification, distinguished *Payne* on three grounds. *Jamerson* involved a putative class of black applicants for academic positions with defendant university, as well as all blacks denied tenure by defendant. The first ground of distinction was that in *Payne* there was less of an individual inquiry to be made with each hiring, tenure, or discharge decision. Second, the decisions in *Payne* were made by the company as a whole and were not departmentalized as in *Jamerson*. And third, plaintiffs in *Payne* were able to point to, and the trial court found, an affirmative policy of racial discrimination at work.

■ The instant case is also distinguishable from *Payne* on similar grounds as was *Jamerson*. Deposition testimony reveals that various methods are used to fill coaching vacancies within defendant system; where a coach from outside the system is chosen, where a coach from within the system but from another school is chosen, and where a coach already teaching at the school is chosen. Furthermore, the selection procedure is localized with each principal and existing head coaches having input for their school. Because of the individualized nature of the inquiry made in hiring, it is clear that more is necessary to be shown here than mere membership in a class which is the victim of a racially discriminatory policy, in order to represent that class. *See Jamerson, supra* at 747. Many of the allegedly racially motivated decisions were asserted by blacks such as school principals. Such decisions indicate lack of typicality and a predominance of individual, even unique, decisional factors.

The Fifth Circuit in the case of *Falcon v. General Tel. Co. of Southwest, supra*, recognized this distinction established in *Jamerson* by its decision to limit the class size on the basis of individuality of hiring procedures. *Id.* at 376. The trial court in *Falcon* certified the class, but limited the class to those Mexican-American employees in defendant company's Irving, Texas, division.

Plaintiff contended that the trial court erred in refusing to extend the class to all Mexican-American employees in any of defendant company's divisions, not just the one at Irving. In affirming the trial court's decision, the Fifth Circuit stated, "[w]e find that the district court acted within its discretion in limiting the class to the Irving location, especially since the various [company] divisions each conduct their own hiring." *Id.* This recognition of the limitation imposed on class size by the individuality of hiring procedures followed a liberal discussion by the Fifth Circuit of "across the board" attacks on racial discrimination in employment. *Id.* at 375. Although this court is also committed to the proposition that Rule 23 should be liberally construed to effectuate the remedial policy of Title VII, it nevertheless recognizes the fundamental requirement mandated by the Supreme Court in *Rodriguez, supra*, that careful attention to the requirements of Rule 23 remains indispensable.

Under the ruling in *Davis v. Board of School Commissioners of Mobile County, supra*, it is questionable whether this court has jurisdiction over the individual claims; but since that is not the question here, the court postpones any decision of that question until after a later hearing.