# EAST TEXAS MOTOR FREIGHT SYSTEM, INC. *v.* RODRIGUEZ ET AL.

No. 75–718.   Argued January 10–11, 1977—Decided May 31, 1977*

---

*Together with No. 75–651, *Teamsters Local Union 657* v. *Rodriguez et al.; Teamsters Local Union 657* v. *Herrera et al.;* and *Teamsters Local Union 657* v. *Resendis et al.* (see this Court's Rule 23 (5)); and No. 75–715, *Southern Conference of Teamsters* v. *Rodriguez et al.; Southern Conference of Teamsters* v. *Herrera et al.;* and *Southern Conference of Teamsters* v. *Resendis et al.* (see this Court's Rule 23 (5)), also on certiorari to the same court.

396

*Richard C. Hotvedt* argued the cause for petitioner in No. 75–718. With him on the briefs were *Harry A. Rissetto, George E. Seay, William C. Strock,* and *Theo F. Weiss. Edward W. Penshorn* argued the cause and filed a brief for petitioner in No. 75–651. *G. William Baab* argued the cause

for petitioner in No. 75–715. With him on the briefs were *David Previant* and *L. N. D. Wells, Jr.*

*Vilma S. Martinez* argued the cause for respondents Rodriguez et al. in all cases. With her on the brief were *Joel G. Contreras, Morris J. Baller,* and *James M. Heidelberg, Jr. Reuben Montemayor* argued the cause for respondents Herrera et al. in Nos. 75–651 and 75–715. With him on the brief was *Harry A. Nass, Jr.*†

MR. JUSTICE STEWART delivered the opinion of the Court.

These cases, like *Teamsters* v. *United States, ante,* p. 324, involve alleged employment discrimination on the part of an employer and unions in the trucking industry. The employer, East Texas Motor Freight System, Inc., is a common carrier that employs city and over-the-road, or "line," truckdrivers. The company has a "no-transfer" policy, prohibiting drivers from transferring between terminals or from city-driver to line-driver jobs.[1] In addition, under the applicable collective-bargaining agreements between the company and the unions, competitive seniority runs only from the date an employee enters a particular bargaining unit, so that a line driver's

---

†*Solicitor General Bork, Assistant Attorney General Pottinger,* and *Abner W. Sibal* filed a memorandum for the United States et al. as *amici curiae* in all cases. Briefs of *amici curiae* in all cases were filed by *Michael A. Warner, Robert E. Williams,* and *Douglas S. McDowell* for the Equal Employment Advisory Council; and by *Jack Greenberg, O. Peter Sherwood, Barry L. Goldstein,* and *Eric Schnapper* for the NAACP Legal Defense and Educational Fund, Inc. *Stephen J. Pollak, John D. Aldock,* and *John Townsend Rich* filed a brief for the National Railway Labor Conference as *amicus curiae* in Nos. 75–651 and 75–715.

[1] Under this policy a city driver must resign his job and forfeit all seniority in order to be eligible for a line-driver job. He gets no priority over other line-driver applicants by virtue of formerly having been with the company, and if he fails to become a line driver he is not automatically entitled to be restored to his city job.

competitive seniority does not take into account any time he may have spent in other jobs with the company.[2]

The respondents brought this suit against the company and the unions in a Federal District Court, challenging the above practices. Although their complaint denominated the cause as a class action, they did not move for class certification in the trial court. After a two-day hearing the court dismissed the class allegations of the complaint and decided against the individual respondents on the merits. The Court of Appeals for the Fifth Circuit reversed, after itself certifying what it considered an appropriate class and holding that the no-transfer rule and the seniority system violated the statutory rights of that class under 42 U. S. C. § 1981 and Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.* (1970 ed. and Supp. V). 505 F. 2d 40. This Court granted certiorari to review the judgment of the Court of Appeals. 425 U. S. 990.

I

The respondents are three Mexican-Americans who initiated this litigation as the named plaintiffs, Jesse Rodriguez, Sadrach Perez, and Modesto Herrera. They were employed as city drivers at the company's San Antonio terminal, and were members of Teamsters Local Union 657 and of the Southern Conference of Teamsters. There was no line-driver operation at the San Antonio terminal, and the respondents stipulated that they had not been discriminated against when they were first hired. In August 1970, some years after they were hired, each of them applied in writing for a line-driver job. In accord with its no-transfer policy, the company declined to consider these applications on their individual merits. The respondents then filed complaints with the Equal Employment Opportunity Commission, and after receiving

---

[2] For a fuller description of a similar seniority system, see *Teamsters* v. *United States, ante,* at 343–344.

"right to sue" letters from the Commission, see 42 U. S. C. § 2000e–5 (e), they brought this lawsuit.

According to the complaint, the suit was brought on behalf of the named plaintiffs and all Negroes and Mexican-Americans who had been denied equal employment opportunities with the company because of their race or national origin. The complaint specifically alleged that the appropriate class should consist of all "East Texas Motor Freight's Mexican-American and Black in-city drivers included in the collective bargaining agreement entered into between East Texas Motor Freight and the Southern Conference of Teamsters covering the State of Texas. Additionally that such class should properly be composed of all Mexican-American and Black applicants for line driver positions with East Texas Motor Freight . . . from July 2, 1965 [the effective date of Title VII] to present." [3]

Despite the class allegations in their complaint, the plaintiffs did not move prior to trial to have the action certified as a class action pursuant to Fed. Rule Civ. Proc. 23, and no such certification was made by the District Judge. Indeed, the plaintiffs had stipulated before trial that " 'the only issue presently before the Court pertaining to the company is whether the failure of the Defendant East Texas Motor

---

[3] In addition to attacking the legality of the company's no-transfer and seniority policies, the complaint charged that the company excluded Negroes and Mexican-Americans from line-driver jobs, and that it had discharged plaintiff Perez and harassed plaintiff Rodriguez in retaliation for their having filed charges with the EEOC. The Southern Conference of Teamsters and Teamsters Local 657 were charged with participating in the exclusion of minority persons from line-driver jobs, acquiescing in the company's other discriminatory practices, and entering into collective-bargaining agreements that perpetuated the discrimination against Mexican-Americans and Negroes and erected "dual lines of seniority." In addition to other relief, the plaintiffs demanded that the company "merge its line-driver and city-driver seniority lists so as to provide for a singular seniority system based solely on an employee's anniversary date with the company."

Freight to consider Plaintiffs' line driver applications constituted a violation of Title VII and 42 U. S. C. § 1981.'" App. 82. And the plaintiffs confined their evidence and arguments at trial to their individual claims. The defendants responded accordingly, with much of their proof devoted to showing that Rodriguez, Perez, and Herrera were not qualified to be line drivers.

Following trial, the District Court dismissed the class-action allegations. It stressed the plaintiffs' failure to move for a prompt determination of the propriety of class certification, their failure to offer evidence on that question, their concentration at the trial on their individual claims, their stipulation that the only issue to be determined concerned the company's failure to act on their applications, and the fact that, contrary to the relief the plaintiffs sought, see n. 3, *supra,* a large majority of the membership of Local 657 had recently rejected a proposal calling for the merger of city-driver and line-driver seniority lists with free transfer between jobs.[4]

The District Court also held against the named plaintiffs on their individual claims. It ruled that the no-transfer policy and the seniority system were proper business practices, neutrally applied, and that the company had not discriminated against the plaintiffs or retaliated against them for filing charges with the EEOC. The court further found: "None of the plaintiff employees could satisfy all of the qualifications for a road driver position according to the company manual due to age or weight or driving record. . . . The driving, work, and/or physical records of the plaintiffs are of such nature that only casual consideration need be given to determine that the plaintiffs cannot qualify to become road drivers." App. 64.

---

[4] The large majority of the members of Local 657 at the meeting that rejected the proposal were Mexican-American or Negro city drivers, negating any possibility that the vote was controlled by white persons or by line drivers.

The Court of Appeals for the Fifth Circuit reversed. With respect to the propriety of the class action, the appellate court discounted entirely the plaintiffs' failure to move for certification. Determination of the class nature of a suit, the court ruled, is a "responsibility [that] falls to the court." 505 F. 2d, at 50. Although the plaintiffs had acknowledged on appeal that only their individual claims had been tried, and had requested no more than that the case be remanded to the trial court for consideration of the class-action allegations, the Court of Appeals itself certified a class consisting of all of the company's Negro and Mexican-American city drivers covered by the applicable collective-bargaining agreements for the State of Texas. Stating that "the requirements of Rule 23 (a) must be read liberally in the context of suits brought under Title VII and Section 1981," *ibid.*, the court found that the named plaintiffs could " 'fairly and adequately protect the interests of the class.' " *Ibid.* The court minimized the antagonism between the plaintiffs and other city drivers with respect to the complaint's demand that seniority lists be merged, since "[t]he disagreement . . . concerned only the proper remedy; there was no antagonism with regard to the contention that the defendants practiced discrimination against the plaintiff class." *Id., at 51.*[5]

After certifying the class, the Court of Appeals went on to find classwide liability against the company and the union on the basis of the proof adduced at the trial of the individual claims. Contrary to the understanding of the judge who had tried the case, the appellate court determined that the trial had proceeded "as in a class action," with the acquiescence of

---

[5] The court also stated that possible antagonism could be cured by tailoring the award of relief, but it did not suggest how such tailoring could be accomplished short of doing what it in fact did: awarding retroactive seniority to discriminatees and ignoring the named plaintiffs' separate demand that the seniority lines be merged.

the judge and the defendants. *Id.*, at 52.[6]  The parties' stipulation that the only issue before the trial court concerned the company's failure to consider the named plaintiffs' applications for line-driver jobs was discounted as no more than "an attempt to eliminate some confusion in the exposition of evidence at trial." *Ibid.*

Accordingly, the Court of Appeals concluded, upon the trial record, that the company had discriminated against Negroes and Mexican-Americans in hiring line drivers, that the company's no-transfer rule and seniority system perpetuated the past discrimination and were not justified by business necessity, that the company's requirement of three years of immediately prior line-haul experience was an illegal employment qualification, and that the unions had violated Title VII and 42 U. S. C. § 1981 by "their role in establishing separate seniority rosters that failed to make allowance for minority city drivers who had been discriminatorily relegated to city driver jobs." 505 F. 2d, at 61. The Court of Appeals did not disturb the trial court's finding that none of the named plaintiffs was qualified to be a line driver; rather, it held only that that finding had been "premature," because each plaintiff, as a member of the class, would be entitled to have his application considered on the merits when future line-driver vacancies arose.[7]

---

[6] The Court of Appeals apparently concluded on the basis of a colloquy appearing in the trial transcript that the parties and the trial judge understood the trial to concern the class claims as well as the individual claims. 505 F. 2d, at 52, and n. 14. This was contrary to the understanding of the trial judge as reflected in his findings. Moreover, as the full colloquy reveals, the trial judge ruled that evidence concerning general company practice would be admitted, not because of the class allegations, but only because it was probative with respect to the plaintiffs' individual claims.

[7] The Court of Appeals ordered that all class members be given an opportunity to transfer to line-driver jobs with retroactive seniority to be determined under the Fifth Circuit's "qualification date" principle. See *Teamsters* v. *United States, ante*, at 333.

## II

It is our conclusion that on the record before it the Court of Appeals plainly erred in declaring a class action and in imposing upon the petitioners classwide liability. In arriving at this conclusion we do not reach the question whether a court of appeals should ever certify a class in the first instance. For it is inescapably clear that the Court of Appeals in any event erred in certifying a class in this case, for the simple reason that it was evident by the time the case reached that court that the named plaintiffs were not proper class representatives under Fed. Rule Civ. Proc. 23 (a).[8]

In short, the trial court proceedings made clear that Rodriguez, Perez, and Herrera were not members of the class of discriminatees they purported to represent. As this Court has repeatedly held, a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members. *Schlesinger* v. *Reservists Committee to Stop the War,* 418 U. S. 208, 216. See, *e. g., Kremens* v. *Bartley, ante,* at 131 n. 12; *Sosna* v. *Iowa,* 419 U. S. 393, 403; *Rosario* v. *Rockefeller,* 410 U. S. 752, 759 n. 9; *Hall* v. *Beals,* 396 U. S. 45, 49; *Bailey* v. *Patterson,* 369 U. S. 31, 32–33. The District Court found upon abundant evidence that these plaintiffs lacked the qualifications to be hired as line drivers.[9] Thus, they could have suffered no injury as a

---

[8] Rule 23 (a) provides:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[9] Jesse Rodriguez did not have prior over-the-road experience with a truck line. His record as a city driver included at least three accidents and at least five personal injuries. Modesto Herrera had been involved in at least three accidents and seven injuries, resulting in much time lost from

result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury. Furthermore, each named plaintiff stipulated that he had not been discriminated against with respect to his initial hire. In the light of that stipulation they were hardly in a position to mount a classwide attack on the no-transfer rule and seniority system on the ground that these practices perpetuated past discrimination and locked minorities into the less desirable jobs to which they had been discriminatorily assigned.

Apart from the named plaintiffs' evident lack of class membership, the record before the Court of Appeals disclosed at least two other strong indications that they would not

---

work. He had received four warning letters from the company, of which three concerned abnormally low productivity. Sadrach Perez had been fired from his city-driver job by the time of suit. The District Court found that on occasion Perez had claimed to be totally and permanently disabled and had then returned to work, and that customers had complained of his disrespect and discourteousness. The company had placed at least four warning letters in his file before discharging him, referring to his failure to make deliveries, poor production, absence from work, and violation of instructions and company policy. More than 10 customers had notified the company that they would refuse freight if Perez was sent to deliver it and would refuse to give up freight if Perez was sent to receive it. An arbitration committee convened in connection with Perez' discharge had decided in the company's favor.

In light of this evidence, the District Court's finding that none of the respondents was qualified to be a line driver was not clearly erroneous. Nor was this finding in any way "premature." The trial had concerned the company's failure to consider the respondents' individual line-driver applications, and the plaintiffs had requested backpay and transfer with carryover seniority in addition to other relief. Even assuming, *arguendo*, that the company's failure even to consider the applications was discriminatory, the company was entitled to prove at trial that the respondents had not been injured because they were not qualified and would not have been hired in any event. See, *e. g., Teamsters* v. *United States, ante,* at 369 n. 53. Cf. *Mt. Healthy City Board of Education* v. *Doyle,* 429 U. S. 274, 285–287.

"fairly and adequately protect the interests of the class." [10]
One was their failure to move for class certification prior to
trial. Even assuming, as a number of courts have held, that a
district judge has an obligation on his own motion to deter-
mine whether an action shall proceed as a class action, see,
e. g., Senter v. General Motors Corp., 532 F. 2d 511, 520–521
(CA6); Garrett v. City of Hamtramck, 503 F. 2d 1236, 1243
(CA6); Castro v. Beecher, 459 F. 2d 725, 731 (CA1), the
named plaintiffs' failure to protect the interests of class mem-
bers by moving for certification surely bears strongly on the
adequacy of the representation that those class members might
expect to receive. See, e. g., Nance v. Union Carbide Corp.,
540 F. 2d 718, 722–725 (CA4), cert. pending, Nos. 76–828,
76–834; Danner v. Phillips Petroleum Co., 447 F. 2d 159,
164 (CA5); Beasley v. Kroehler Mfg. Co., 406 F. Supp.
926, 931 (ND Tex.); Walker v. Columbia University, 62
F. R. D. 63, 64 (SDNY); Glodgett v. Betit, 368 F. Supp.
211, 214 (Vt.); Herbst v. Able, 45 F. R. D. 451, 453
(SDNY). Another factor, apparent on the record, suggesting
that the named plaintiffs were not appropriate class repre-
sentatives was the conflict between the vote by members of
the class rejecting a merger of the city- and line-driver collec-
tive-bargaining units,[11] and the demand in the plaintiffs' com-
plaint for just such a merger. See, e. g., Hansberry v. Lee,
311 U. S. 32, 44–45.

We are not unaware that suits alleging racial or ethnic
discrimination are often by their very nature class suits,
involving classwide wrongs. Common questions of law or fact
are typically present. But careful attention to the require-
ments of Fed. Rule Civ. Proc. 23 remains nonetheless indis-
pensable. The mere fact that a complaint alleges racial or
ethnic discrimination does not in itself ensure that the party
who has brought the lawsuit will be an adequate representa-

---

[10] See Fed. Rule Civ. Proc. 23 (a), quoted in n. 8, supra.

[11] See supra, at 400.

tive of those who may have been the real victims of that discrimination.

For the reasons we have discussed, the District Court did not err in denying individual relief or in dismissing the class allegations of the respondents' complaint.[12] The judgment of the Court of Appeals is, accordingly, vacated, and the cases are remanded to that court for further proceedings consistent with this opinion.[13]

*It is so ordered.*

---

[12] Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and, provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims. See, *e. g., Franks* v. *Bowman Transportation Co.,* 424 U. S. 747, 752–757; *Moss* v. *Lane Co.,* 471 F. 2d 853, 855–856 (CA4). Where no class has been certified, however, and the class claims remain to be tried, the decision whether the named plaintiffs should represent a class is appropriately made on the full record, including the facts developed at the trial of the plaintiffs' individual claims. At that point, as the Court of Appeals recognized in this case, "there [are] involved none of the imponderables that make the [class-action] decision so difficult early in litigation." 505 F. 2d, at 51. See also *Cox* v. *Babcock & Wilcox Co.,* 471 F. 2d 13, 15–16 (CA4).

[13] The union petitioners, in Nos. 75–651 and 75–715, also attack the judgments entered against them in *Herrera* v. *Yellow Freight System, Inc.,* 505 F. 2d 66 (CA5), and *Resendis* v. *Lee Way Motor Freight, Inc.,* 505 F. 2d 69 (CA5). The judgments against the unions in those related cases are also vacated, and the cases are remanded to the Court of Appeals for further consideration in light of this opinion and our opinion in *Teamsters* v. *United States, ante,* p. 324.