**Mazeline Hammer STEUR**

v.

**ITT CONTINENTAL BAKING CO., INC.**

Civ. A. No. 77–0220–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 2, 1977.

Susan G. Moenssens, Andre A. Moenssens, Henry L. Marsh, III, Randall G. Johnson, Hill, Tucker & Marsh, Richmond, Va., for plaintiff.

Gerald L. Baliles, Bell, Ellyson, Wilkins, and Baliles, Richmond, Va., for defendant.

## ORDER

WARRINER, District Judge.

This action was filed on 15 April 1977 as a Title VII class action. Discovery has proceeded on the question of class certification and plaintiff filed an appropriate motion and brief on 16 August. Having heard counsel in status conference and having studied the briefs as well as the deposition of plaintiff and defendant's answers to interrogatories, the Court believes no class should be certified in this case.

From the spring of 1956 to the fall of 1972, a period of over 16 years, Mrs. Steur was an employee of Continental Bakery. Starting as a "demonstrator" of bakery products door-to-door and in grocery stores, Mrs. Steur worked herself up to supervisor of demonstrators, plant hostess and area supervisor of thrift stores. When new management took over the top positions at the bakery in 1970 Mrs. Steur's responsibilities and duties were gradually reduced. She first lost supervisory responsibility over the thrift stores and, finally, the position of plant hostess with its supervisory duties over demonstrators was eliminated. Shortly thereafter her employment was terminated. As early as 1960 she considered herself, and was considered by her immediate superior, the sales manager, to be in a supervisory position. Commencing about 1960 and continuing until the advent of new management, above mentioned, she received a salary rather than an hourly wage. She devoted herself to her duties without any particular regard to hours, often working as many as 60 hours during a week.

Her duties as plant hostess involved soliciting, screening, organizing, handling requests for and conducting tours of the bakery. She was also required to independently schedule and travel to various points in central Virginia to give lectures, show movies and conduct question and answer sessions.

As supervisor of demonstrators she was required to interview and screen applicants for jobs and make recommendations to the sales manager as to who should be hired. Her recommendations were almost uniformly accepted. She was required to train and schedule the demonstrators and see to it that the job was properly performed. This work included accompanying demonstrators on their tours of supermarkets to see to it that her training was being properly applied. During the course of her duties as

supervisor of demonstrators the number of demonstrators varied from two to six.

As area manager of the thrift stores, Mrs. Steur had played a substantial part in organizing and expanding the thrift store operations in the area. She had assisted in hiring the personnel to man the several thrift stores which were located as far east as Hampton and as far west as Charlottesville. She instituted a form of record keeping and she received and reviewed the records of the several stores under her supervision. She frequently visited the stores to supervise their arrangement and operation.

Though switched to an hourly wage about 1969 or 1970 her responsibilities for the most part remained the same initially. Thereafter her supervisory functions over thrift stores were substantially reduced. During 1970, '71 and '72 she was permitted to work fewer and fewer days per week. With respect to her positions as plant hostess and demonstrator supervisor Mrs. Steur characterized this period as being one in which her, "responsibilities remained the same but my duties were reduced." Page 84, lines 14–18. Finally, in October, 1972, she was reduced to a position of relief thrift store clerk and her supervisory fringe benefits were terminated. The next month her services were terminated.

Mrs. Steur never considered herself a part of the general employee population. She had little or no nexus with hourly wage earners, route salesman, production workers or office personnel. Despite the fact that defendant is almost wholly union, plaintiff never joined. Her testimony on pages 97 through 102 clearly show that she thought of herself, and was, separate and apart from the hourly wage earners employed at the bakery. She said, "I was the only woman in my situation working in the plant . . . ." The questions and answers on pgs. 53–56 further explain the distinctions Mrs. Steur drew between her position with the company and the other employees. There is no numerosity.

Though some cases have been interpreted as indicating that the nexus required to exist between a named plaintiff and a class may be as broad as that they are all of the same sex or race, *see Barnett v. W. T. Grant Co.*, 518 F.2d 543 (4th Cir. 1975), this expansive interpretation has been substantially restricted in later cases. *Cf. Doctor v. Seaboard Coastline Railroad Company*, 540 F.2d 699 (4th Cir. 1976) and *Roman v. E.S.B.*, 550 F.2d 1343 (4th Cir. 1976). The Fifth Circuit had already recognized the inadvisability of stretching nexus to such an extreme in *Wells v. Ramsay, Scarlett and Company, Inc.*, 506 F.2d 436 (5th Cir. 1975). Whatever questions might have existed about the extent of the required nexus was laid to rest by the Supreme Court this year in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 1896–1898, 52 L.Ed.2d 453 (1977);

> As this Court has repeatedly held, a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.

> .　　.　　.　　.　　.

> We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to Fed.R.Civ.P. 23 remains nonetheless indispensible. The mere fact that a complaint alleges racial or ethnic discrimination does not in itself insure that the party who has brought the law suit will be an adequate representative of those who may have been the real victims of that discrimination.

From her own deposition, it is clear that Mrs. Steur is not "a part of the class" which she seeks to represent. Nor is her dispute consistent with the alleged disputes of the proposed class. Even if it be considered that her position with Continental Bakery was lacking in all the attributes of a supervisory or management position, it is clear that her attitude about herself in her job was wholly that of a supervisor or manager.

For the foregoing reasons the Court DENIES class certification as sought by plaintiff in this action.

And it is so ORDERED.