**Howard R.L. COOK, individually and on behalf of the Black Employees of the Library of Congress, et al.,**

v.

**Daniel J. BOORSTIN, Librarian of Congress, Roland Grayson, et al., Appellants.**

**No. 84–5429.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 26, 1985.

Decided June 7, 1985.

Marc L. Fleischaker, Washington, D.C., with whom Gary S. Marx and Kerry Alan Scanlon, Washington, D.C., were on the brief, for appellants.

John W. Polk, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., and Lana Kay Jones, Asst. Gen. Counsel, Li-

brary of Congress, Washington, D.C., were on the brief, for appellees.

Before ROBINSON, Chief Judge, MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This is an appeal by thirty-one black employees and former employees of the Library of Congress, challenging the district court's refusal to allow them to intervene in a Title VII class action brought against the Library. We agree with appellants that our decision in *Foster v. Gueory*, 655 F.2d 1319 (D.C.Cir.1981), requires reversal of the district court's order.

## I. BACKGROUND

In 1975, Howard Cook, David Andrews, and an organization called the Black Employees of the Library of Congress ("BELC") filed a class action administrative complaint alleging racially and sexually discriminatory employment practices throughout the Library. The Library's final decision, issued more than six years later, concluded that the "investigative file does not support the allegations of discrimination."

In February 1982, Cook and the BELC filed a Title VII class action complaint in the district court. Four months later they filed an amended complaint narrowing their allegations; specifically, they charged that the Library systematically discriminated against its black professional and administrative employees in making promotion and advancement decisions. At the same time, six black Library employees sought to intervene as plaintiffs and additional class representatives. The proposed amended complaint incorporated the claims of the six applicants for intervention and charged the Library with, *inter alia*, basing promotion decisions on "unvalidated tests which disqualify a disproportionate number of minority and female employees" and on "unchecked, unvalidated subjective recommendations of supervisory personnel."

In late 1983, the district court allowed all six employees to intervene. The court found that two of the employees, who had filed separate administrative complaints, were entitled to intervene of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Rule 24(a)(2) requires the district court to grant a timely filed application for intervention whenever

> the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As to the other four applicants, the court found that intervention of right was unavailable, but nonetheless exercised its discretion to allow permissive intervention under Rule 24(b)(2). That subsection states that a court "may" grant a timely motion to intervene if "an applicant's claim or defense and the main action have a question of law or fact in common." The court also granted leave to file the amended complaint, but denied the plaintiffs' motion for class certification. Plaintiffs moved for reconsideration.

While the motion for reconsideration was pending, the thirty-one appellants in this action filed their motion to intervene. All are or were employed in administrative or professional positions at the Library, and all claim to have been discriminated against in promotion or advancement because they are black. Like the original plaintiffs in the action and the six intervenors, the thirty-one applicants alleged that they had been victimized by systematic discrimination in the Library's personnel practices. In individual affidavits filed with a second proposed amended complaint, each of the applicants claimed experience with the Library's personnel system "very similar" to the claims raised by the plaintiffs.

In June 1984, the district court nonetheless denied the intervention motion. The court's terse order commented only

that "the four criteria for intervention under Rule 24(a) have not been satisfied and ... intervention under Rule 24(b) would subject defendant to undue prejudice and unduly delay the adjudication of the rights of the parties."

On the same date, the district court granted the plaintiffs' motion for reconsideration of the denial of class certification. Instead of certifying the class as requested by plaintiffs, however, the court created six narrow subclasses defined to match closely the particular facts alleged by six of the named plaintiffs. It is unclear which, if any, of the appellants would have fit within any of the subclasses. In any event, counsel informed this court at oral argument that the district court subsequently decertified all but one of the subclasses, retaining class representation only for those black employees who were allegedly not promoted because of the Library's failure to post certain job openings. Although this subclass contains close to 400 members, it apparently does not include any of the appellants. Since many of the appellants never perfected their claims by timely filing of individual administrative complaints, the district court's denial of their motion to intervene effectively precluded them from obtaining any judicial relief for the wrongs they alleged.

## II. ANALYSIS

We do not reach appellants' challenge to the district court's discretionary denial of permissive intervention to the thirty-one appellants, because we agree with appellants that our decision in *Foster v. Gueory,* 655 F.2d 1319 (D.C.Cir.1981), required the district court to grant them intervention of right. In *Foster,* four union members sued their union and several employers under Title VII, alleging racial discrimination in matters relating to employment as pile drivers. After the district court refused to certify the suit as a class action brought on behalf of all minority victims of racial discrimination with respect to employment as pile drivers, three persons moved to intervene as additional plaintiffs. They alleged that their experience differed from that of the four original plaintiffs only in that racial discrimination had prevented the three movants from even obtaining union membership or apprenticeship training. The district court denied intervention for failure to exhaust administrative remedies, and the movants appealed.

This court reversed, ruling first that the claims raised by the plaintiffs and intervenors were all so similar that the administrative complaint pursued by one of the original plaintiffs had satisfied the exhaustion requirement for the would-be intervenors as well, and second that the three appellants were entitled to intervene of right under Rule 24(a)(2). The court's reasoning in *Foster* applies fully to the case at hand.

A. *Exhaustion.* Before bringing a civil action under Title VII, a plaintiff must generally exhaust his or her administrative remedies. *See, e.g., United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571 (1977); *Kizas v. Webster,* 707 F.2d 524, 543 (D.C.Cir.1983). Along with other circuits, this court has allowed the exhaustion requirement to be satisfied vicariously under certain circumstances. *See Foster,* 655 F.2d at 1321–22. Although most of the thirty-one appellants failed to file timely complaints with the Library's Equal Employment Office, the district court did not mention exhaustion when denying intervention, and the Library has raised the exhaustion issue on appeal only obliquely. Part of the explanation for the Library's reticence may be the district court's earlier ruling on exhaustion with respect to the six employees allowed to intervene. Four of those employees had not filed administrative charges, but the district court held that, under *Foster v. Gueory,* the exhaustion requirement was satisfied for those employees by the administrative class action filed by Cook and the BELC. We think that determination was correct, and for the same reason we find that the failure by some of the appellants to file individual

administrative complaints does not bar their intervention in this action.

The test set forth in *Foster* for vicarious exhaustion hinges on functional identity of claims:

It thus appears that the critical factor in determining whether an individual Title VII plaintiff must file an [administrative] charge, or whether he may escape this requirement by joining with another plaintiff who has filed such a charge, is the similarity of the two plaintiffs' complaints. Where the two claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate [administrative] charges, then it would be "wasteful, if not vain" ... to require separate ... filings. However, where the two complaints differ to the extent that there is *a real possibility that one of the claims might be administratively settled while the other can be resolved only by the courts,* ... each plaintiff should be required to separately file ... [a] charge in order to effectuate the purpose of Title VII's provisions for administrative relief.

655 F.2d at 1322 (emphasis added).

Although the specific circumstances giving rise to the grievances of each of the plaintiffs and would-be intervenors in this case are distinguishable, each of the employees plans to prove his or her allegations by demonstrating the same thing: a pervasive "pattern and practice" of racial discrimination in promotion and advancement of administrative and professional employees throughout the Library. Since the existence of such systemic discrimination is precisely what the Library denied in its final decision in the administrative class action brought by Cook and the BELC, there would appear to have been no substantial possibility that any of the individual claims might have been settled administratively. In the circumstances of this case, therefore, the exhaustion requirement has been fully satisfied for all of the appellants.

*B. Intervention.* The *Foster* panel read Rule 24(a)(2) to establish "four criteria

for intervention of right," 655 F.2d at 1324, and determined that the appellants before the court satisfied each of the criteria.

*First,* the panel considered the requirement imposed by Rule 24(a) that the intervention motion be timely filed. The court found the requirement was satisfied because the appellants' motion had been filed little more than a month after the district court had denied class certification. As the Library tacitly concedes, the timeliness requirement is therefore also satisfied in the present case, because the appellants now before us filed their intervention motion within five weeks of the denial of class certification.

*Second,* the court addressed the requirement that an intervenor of right claim "an interest relating to the property or transaction which is the subject of the action," Fed.R.Civ.P. 24(a)(2). Noting that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," 655 F.2d at 1324 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967)), the panel concluded that the test was satisfied because

[a]ppellants are persons who allege that they have suffered injury from the same or very similar wrongful acts as those complained of by the original plaintiffs, and appellants' claims for relief are founded on the same statutory rights as are the claims of the plaintiffs. While the individual acts of discrimination suffered by the plaintiffs and the appellants may differ, they each assert their claims as a result of the same "significantly protectable interest" ... in being free of racial discrimination in employment.

*Id.* at 1324–25 (citation omitted). As discussed below, the Library argues that the current appellants fail to meet this standard.

*Third,* the *Foster* panel concluded that the appellants' interests might be "practically impaired or impeded" by disposition of the plaintiffs' suit, because appellants and plaintiffs challenged the same practices of the defendants, and the trial court's

consideration of the plaintiffs' claims "could result in a determination that certain of these practices as a matter of law do not violate either Title VII or § 1981." *Id.* at 1325. The panel noted that *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C.Cir.1967), had established the sufficiency of such potential *stare decisis* effects as sufficient to meet the Rule 24(a)(2) requirement. The Library does not argue expressly that the appellants also fail to satisfy this third requirement, but, as discussed below, such an argument may be implied by the Library's contention that the factual variability of the employees' claims renders intervention inappropriate.

*Fourth,* the court considered the "adequacy of representation" requirement. The court noted that the fourth requirement is met if the representation "may" be inadequate, and that inadequacy was quite possible in the case before the court both (a) because the appellants' cases differed slightly from the plaintiffs' in that the appellants had been unable even to join the union, and (b) because each of the plaintiffs and appellants was seeking back pay (as are the plaintiffs and appellants currently before us), and "there is no way that plaintiffs could represent all of appellants' individual claims adequately." *Id.* The Library does not dispute that the appellants' motion for intervention satisfied this last criterion.

Although the court's reasoning in *Foster v. Gueory* appears squarely applicable to the appeal now before us, the Library attempts to distinguish *Foster* based on the relative complexity of the facts involved in the present case and based on a highly creative argument concerning standing. We find neither purported distinction convincing.

*1. Factual complexity.* The Library attempts to distinguish this case from *Foster* based on the variation in the factual situations presented by the appellants in this case and on the sheer number of persons who seek to intervene. In *Foster,* three persons sought to intervene in a suit brought by four others, and all seven claimed discrimination with respect to the same job of pile driver. Here, in contrast, thirty-one persons seek to intervene in a class action brought by seven individual plaintiffs and an organization, and the thirty-eight individuals involved hold a variety of different jobs under different promotion and advancement schemes. The Library suggests that the appellants in this case therefore fail to meet the "interest in the transaction" test for intervention of right under *Foster,* and by implication the Library may be understood also to deny that the appellants' interests could be "practically impaired or impeded" by disposition of the plaintiffs' suit.

We note at the outset that we are far from convinced that the factual circumstances of the plaintiffs and intervenors in *Foster* were significantly more homogeneous than those presented by the plaintiffs and appellants in this case. True, there was only one job at issue in *Foster* —pile driver—and this case involves a myriad of different positions. But in this case all the plaintiffs and intervenors share a common employer; there is only one defendant. In *Foster,* several different employers and labor organizations appear to have been named as defendants. *See* 655 F.2d at 1321. Moreover, this case does not contain the tension between the interests of union members and non-members, a tension explicitly recognized by the court in *Foster. See id.* at 1325. In any event, even granting that there is more factual variability in this case, we believe *Foster* is still controlling.

*(a) Interest in the transaction.* Like the appellants in *Foster,* the thirty-one appellants in this case, although complaining of separate personnel actions, all allege they have suffered from a system of racial discrimination "the same [as] or very similar [to]" that described in the plaintiffs' complaint. *Foster,* 655 F.2d at 1325. Consequently, each may be said to have "assert[ed] their claims as a result of the same 'significantly protectible interest' ... in being free of racial discrimination in employment." *Id.*

Nonetheless, the Library suggests that *Foster* and *Nuesse v. Camp*, 385 F.2d 694 (D.C.Cir.1967), require a balancing of sorts, and that the balance comes out differently in this case than in *Foster*. *Foster* and *Nuesse* construed the "interest test" to be "primarily a practical guide to disposing of lawsuits by involving as many persons as is compatible with efficiency and due process," 655 F.2d at 1324; 385 F.2d at 700, and the court ordered intervention in *Foster* only after concluding that "intervenors are indeed concerned persons whose involvement in the suit is compatible with efficiency and due process," 655 F.2d at 1324. The Library suggests that the number of people seeking intervention in this case and the differences in the factual circumstances giving rise to their complaints mean that the involvement of appellants would not be compatible with efficiency and due process.

■ Despite the general understanding that "[a]n application for intervention of right seems to pose only a question of law," 7A C. Wright & A. Miller, *Federal Practice & Procedure* 1902 (Supp.1984), we would ordinarily be inclined to give substantial weight to a trial court's findings with regard to whether intervention would comport with efficiency and due process. In this case, however, there are essentially no factual findings to which to defer; in denying intervention of right the district judge stated only that "the four criteria for intervention under Rule 24(a) have not been satisfied." Consequently, we must make our own determination under *Foster* and *Nuesse*.

We do not think it could be argued seriously that allowing intervention in this case would violate due process, and the Library in any event does not press such an argument. What the Library does argue is that allowing the appellants to intervene would make no sense in terms of judicial efficiency, because at bottom "these are 31 separate disparate treatment cases." The Library recognizes that its efficiency argument depends on a denial of the appellants' claim that their cases will rely on substan-

tially the same evidence as the plaintiffs' case. The "efficiency" issue, therefore, ultimately becomes a question of acceptable methods of proof in Title VII cases.

■ More specifically, the question is whether a plaintiff bringing a disparate treatment claim against the Library can rely on evidence of Library-wide discrimination or must instead limit his or her proof to evidence of discrimination in the plaintiff's particular job category. Initially, it is clear that statistical evidence—despite its perhaps more familiar use to show disparate impact—can in general also be used to prove disparate treatment claims. As part of his or her prima facie case, a plaintiff alleging disparate treatment may introduce statistics tending to demonstrate a "pattern and practice" of discrimination, i.e., evidence "that racial discrimination was the [defendant's] standard operating procedure—the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977); *see also, e.g., Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Segar v. Smith*, 738 F.2d 1249 (D.C. Cir.1984); *Minority Employees at NASA (MEAN) v. Beggs*, 723 F.2d 958 (D.C.Cir. 1983). In addition, a disparate treatment plaintiff may employ statistics concerning the employment practices of the defendant to rebut explanatory defenses as pretextual. *See, e.g., MEAN v. Beggs; Sweat v. Miller Brewing Co.*, 708 F.2d 655, 658 (11th Cir.1983).

The Library argues, however, that the only statistics relevant for these purposes are those concerning the particular job held or sought by the plaintiff: "Evidence tending to show discrimination in librarian positions would not be relevant to show discrimination in lawyer positions, or indeed in any other position." Moreover, the Library contends, "given the different types of librarian jobs at the Library, not all librarian jobs could be lumped together."

We disagree. It strikes us as altogether obvious that statistical (or anecdotal) evi-

dence that the Library discriminated against its black librarians would be *relevant* to whether the Library discriminated against its black attorneys. Disallowing such evidence at the threshold would not only be silly, it would be pernicious: the plethora of job categories at the higher levels of the federal bureaucracy and in many other white collar organizations suggests that adopting the Library's approach to proof of discrimination could well preclude the effective use of statistics in combatting race discrimination in many if not most areas of high-level employment. If white collar employees, particularly in the federal government, are limited to statistics involving their particular job classification, generating a large enough numerical base from which to draw statistically significant conclusions is likely in case after case to prove impossible or prohibitively onerous. *See Valentino v. USPS*, 674 F.2d 56, 72 (D.C.Cir.1982); Bartholet, *Application of Title VII to Jobs in High Places*, 95 Harv.L.Rev. 945, 1003 (1982). The evidentiary approach recommended by the Library would thus do much to immunize from Title VII attack those sectors of the work force most in need of integration. *See* Bartholet, *supra*, at 948–49. The result would be antithetical to the broad remedial goals set by Congress in establishing this country's strong policy against discrimination in the workplace.

The Library cites several cases for the proposition that the relevant statistical pool for Title VII calculations is the pool of qualified applicants, but those cases do not support the Library's position. Those cases establish only that the percentage of minority employees selected for a given position should be compared to the percentage of minority candidates in the pool of persons *qualified for that position*, not that the *only* positions from which meaningful statistics can be drawn are those for which the plaintiff himself or herself is qualified. For example, in *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), the Supreme Court held that the racial composition of a school district's teacher

work force could meaningfully be compared only to the racial composition of the pool of qualified candidates, not to the racial composition of the student body. In no way, however, did the Court suggest that a comparison of, say, the racial composition of the administrative staff with that of the relevant applicant pool for administrative positions would be irrelevant to the issue of discrimination in teaching jobs.

Similarly, in *Valentino v. USPS*, 674 F.2d 56 (D.C.Cir.1982), this court found statistical evidence inadequate to make out a prima facie case of discrimination because the plaintiff had failed to "control for occupational classifications," *id.* at 69–70, but we certainly did not suggest that the only permissible way of controlling for occupational classifications was to consider only statistics concerning the plaintiff's particular job. To the contrary, we expressly recognized the potential relevance of discrimination in jobs other than that held or desired by the plaintiff: "Proof that discrimination exists within occupational categories may well support an inference of workplace-wide discrimination." *Id.* at 71 n. 27.

More generally, it is well settled that "tests for the sufficiency of a Title VII prima facie case must not be applied in a 'rigid, mechanistic, or ritualistic way.' ... The ultimate test of sufficiency must remain ... [whether] the plaintiffs offer evidence 'adequate to create an inference that * * * employment decision[s] * * * [were] based on a discriminatory criterion illegal under the Act." *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C.Cir.1984) (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), and *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)).

We think the appellants are clearly correct that evidence of discrimination throughout the Library is relevant to each of their claims. The plaintiffs and the intervenors all say they plan to make such

evidence of systemic discrimination the centerpiece of their case, and their representations in this regard must be accepted as true. *See SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1390 (D.C.Cir.) ("[T]he burden of proof rests on those resisting intervention."), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *Central States, S.E. & S.W. Areas Health & Welfare Fund v. Old Security Life Ins. Co.*, 600 F.2d 671, 679 (7th Cir.1979) ("All nonconclusory allegations supporting a motion to intervene are taken as true, absent sham, frivolity, or other objections."); *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (same). Compared to the alternative of forcing those appellants who have exhausted their administrative remedies to bring separate civil actions, allowing intervention by the thirty-one appellants seems fully consistent with, if not mandated by, concerns of judicial efficiency.

Allowing intervention, it need hardly be noted, does not preclude separate trials of particular claims or even issues. If these complaints are ever actually tried, the district court will have broad discretion under Rule 42(b) to order separate trials as appropriate to further the aims of justice.

*(b) Practical impairment of interests.* In *Foster,* the court found that the appellants' interests might be "practically impaired or impeded" by the plaintiffs' litigation because it was possible "that trial of plaintiffs' claims could result in a determination that certain of these practices [challenged both by plaintiffs and the would-be intervenors] as a matter of law do not violate either Title VII or § 1981." 655 F.2d at 1325. That concern is not nearly so strong in this case, given the wide variety of actions challenged by plaintiffs and appellants here. Nevertheless, the reasoning does apply to some extent, since part of what the plaintiffs and intervenors all challenge in this case is the Library's failure to adopt less subjective employment practices.

More importantly, a *stare decisis* consideration similar but not identical to the one noted by the panel in *Foster* applies to this case quite forcefully: it is possible that

trial of plaintiffs' claims could result in a determination that certain statistical evidence, on which both the plaintiffs and the intervenors plan to rely, is inadmissible or insufficient as a matter of law. Consequently, the potential for practical impairment of the appellants' interests seem just as substantial here as in *Foster.*

*2. Standing.* The Library devotes little of its brief to its attempt to distinguish *Foster v. Gueory* based on the relative factual simplicity of that case; by far the main part of the Library's argument on intervention of right is that appellants lack standing to intervene under Rule 24(a). Relying on this court's recent decision in *Southern Christian Leadership Conference (SCLC) v. Kelley,* 747 F.2d 777 (D.C. Cir.1984), the Library builds an elaborate argument that to intervene of right a party must have standing to challenge or defend the precise actions challenged by the original plaintiffs. This is certainly an interesting interpretation, but the case quite plainly says nothing of the kind.

At issue in *SCLC v. Kelley* was a motion by Senator Jesse Helms to intervene of right in a suit aimed in part at limiting public disclosure of tapes generated during the FBI's electronic surveillance of Dr. Martin Luther King, Jr., in the 1960's. Senator Helms claimed an interest in the matter because access to the tapes would, he claimed, better inform his and the Senate's vote on a resolution to designate Dr. King's birthday as a national holiday. This court ruled against Senator Helms on the ground that he lacked standing to pursue such a rarefied interest in federal court.

For present purposes, the case stands only for the proposition that an intervenor of right, just like an ordinary plaintiff, must have standing. Senator Helms was not allowed to intervene for the same reason he would not have been allowed to bring a separate action seeking to vindicate his interest in casting an informed vote: he lacked standing to assert that interest in federal court. The problem was not that the basis of his standing differed slightly from the basis of the plaintiffs' standing;

the problem was that he had no standing at all.

We do not understand the Library to suggest that the appellants in this action would lack standing to assert their Title VII rights in separate actions; indeed, separate actions are apparently just what the government thinks the law requires. The Library's position is instead that the appellants should not be permitted to pursue their interests in *this* suit, because the basis of their standing differs in some particulars from the basis of the plaintiffs' standing. Such a restriction on intervention finds no support in *SCLC v. Kelley*, nor in any other cases of which we are aware, nor, for that matter, in common sense. The whole point of intervention is to allow the participation of persons with interests distinct from those of the original parties; it is therefore to be expected that an intervenor's standing will have a somewhat different basis from that of the original plaintiffs.

Even if we found the Library's argument to have some facial plausibility—which we assuredly do not—we would be obliged to reject it on the authority of *Foster v. Gueory*. We discern nothing in the Library's argument concerning standing that distinguishes the facts of this case from those of *Foster*. The government's brief suggested that *Foster* was for that reason wrongly decided, but at oral argument counsel for the government disavowed any request that we overturn *Foster*, and as a panel we are without authority or inclination to do so in any event.

### III. CONCLUSION

We therefore vacate the district court's denial of the appellants' motion to intervene, and we remand the case for further proceedings consistent with this opinion.

By way of guidance, we suggest that on remand the district court may wish to reconsider its denial of class certification in light of today's decision. Particularly given the large number of employees who we hold must otherwise be granted interven-

tion of right, it may well make more sense for this case to proceed as a class action.

We note that class certification in this case does not appear precluded by the Supreme Court's decisions in *East Texas Motor Freight Systems, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), and *General Telephone Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In *Rodriguez*, the Court held that class certification was inappropriate where it was clear at the time of certification that the named plaintiffs, who sought to represent victims of employment discrimination, were not themselves qualified for the positions allegedly denied to them on racial and ethnic grounds. In the case before us, however, there has been no showing that the named plaintiffs were unqualified for the promotions or advancements they claim they should have received.

To be sure, the plaintiffs in this case were not qualified as a group for every position allegedly denied on racial grounds to one or more members of the class, but that hardly warrants denial of class certification under *Rodriguez*. The basis for the Court's ruling in *Rodriguez* was that the named plaintiffs in that case were known at the time of certification to lack qualification for the particular positions they had sought: "they could have suffered no injury as a result of the allegedly discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." 431 U.S. at 403–04, 97 S.Ct. at 1897; *see also Falcon*, 457 U.S. at 156, 102 S.Ct. at 2369. Manifestly, that representational defect is not present in this case.

More recently, in *Falcon*, the Court made clear that "[t]he mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15. To warrant class certification, the Court held,

**1472**

a plaintiff alleging disparate treatment must show that his treatment was in some way typical of that received by other class members. Plaintiffs in this case appear to have met that requirement amply by presenting affidavits and memoranda suggesting that the Library's subjective standards for advancement have resulted in systematic discrimination against blacks and other minorities. That such a showing could be sufficient was expressly noted by the *Falcon* Court itself: "Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decision-making processes." *Id.*

Title VII embodies a profound national commitment to end the scourge of racism and sexism in our country's workplaces. If our nation is to move with speed toward genuine equality of opportunity, employers, including federal agencies, cannot be allowed to escape the requirements of Title VII by a litigation strategy of divide and conquer. "Careful attention" to the Federal Rules of Civil Procedure of course remains "indispensible," *Falcon,* 457 U.S. at 157, 102 S.Ct. at 2370; *Rodriguez,* 431 U.S. at 405–06, 97 S.Ct. at 1897–98, but those rules, it should be remembered, are to be "construed to secure the just, speedy, and inexpensive determination of every action," Fed.R.Civ.P. 1.

We recognize and are sympathetic to the burdens placed on trial judges by cases involving multiple parties and multiple lawyers. It is fine for commentators and appellate courts to speak of the systemic efficiency of trying one lawsuit in lieu of many, but a multi-party action obviously does little in the short run to alleviate the workload of the individual trial judge to whom it is assigned. Instead, the trial judge faces only the demands of managing a complex proceeding, maintaining order among many litigants, and assembling a coherent record out of a jumble of pleadings, testimony and evidentiary exhibits.

We recognize also that the burdens placed on the trial judge can rise geometrically with the number of parties and claims. Nevertheless, the judicial system as a whole benefits substantially when similar complaints are resolved in a single unified proceeding, and the advantages in terms of efficiency and uniformity are simply too great to ignore. In the case before us, we need not strike the balance between these disparate concerns; the balance has already been struck by statute, rule and precedent.

The district court's denial of class certification in this case appears to have reflected an overly restrictive view of the prerequisites for bringing a class action under the Federal Rules of Civil Procedure. In any event, the court's subsequent refusal to allow the appellants to intervene in this action clearly reflected a mistakenly wooden understanding of Rule 24, and that decision is accordingly reversed.

*Reversed and remanded.*