Willie Lee ROBY, Lee Otis Gordon, and Cab Willingham, Appellants,

v.

ST. LOUIS SOUTHWESTERN RAILWAY CO.; United Transportation Union Local No. 462; and United Transportation Union Local No. 116, Brotherhood Locomotive Firemen and Enginemen, Appellees.

No. 84–1640.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1985.

Decided Oct. 17, 1985.

As Amended Nov. 15, 1985.

Eugene Hunt, Pine Bluff, Ark., for appellants.

Spencer Robinson, Pine Bluff, Ark., for St. Louis Southwestern Ry. Co.

Thomas A. Carraway, Birmingham, Ala., for U.T.U., Local 462.

Before ARNOLD and FAGG, Circuit Judges, and HARPER,* Senior District Judge.

FAGG, Circuit Judge.

Willie Lee Roby, Lee Otis Gordon, and Cab Willingham (Appellants) appeal from the district court's order decertifying a

---

* The HONORABLE ROY W. HARPER, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

class of black employees purportedly discriminated against by the defendant St. Louis Southwestern Railway Company (Railroad) in violation of Title VII of the Civil Rights Act (42 U.S.C. §§ 2000e *et seq.*) and from the district court's judgment in favor of the Railroad on their individual claims of discrimination. We affirm.

For reversal of the decertification order Appellants argue that the district court committed error by finding that they as class representatives did not meet the requirements of Federal Rule of Civil Procedure 23(a). As to his individual claim Roby argues that the district court committed error by not following the approach this court outlined in *Craik v. Minnesota State University Board,* 731 F.2d 465 (8th Cir. 1984). In respect to their individual claims Gordon and Willingham contend that the district court erroneously applied the law of disparate treatment to their disparate impact claims.

## CLASS DECERTIFICATION

■ The district court's decertification must be upheld unless it was an abuse of discretion. *Belles v. Schweiker,* 720 F.2d 509, 515 (8th Cir.1983) (standard for certification); *Livesay v. Punta Gorda Isles, Inc.,* 550 F.2d 1106, 1110 (8th Cir.1977) (standard for decertification).

Before trial the district court conditionally certified a class of "all black persons who have been employed by the [Railroad] in the Operating Department of the Pine Bluff, Arkansas facility since September 18, 1972, who are or have been assigned, limited, segregated, classified, restricted, denied transfers, reassignment, demoted, discharged, laid off disproportionately, or discriminated against by the [Railroad] with respect to promotions, assignments, training or otherwise deprived of employment opportunities related to said factors because of their race or color."

The district court decertified the class after trial because it found that Appellants failed to satisfy Federal Rule of Civil Procedure 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation.

The district court specifically found that Appellants were inadequate class representatives because they had failed to join the National United Transportation Union which had the power to negotiate certain collective bargaining agreements with the Railroad that were being contested at trial. Because Appellants do not meet other requirements of Rule 23(a), however, we need not address whether their failure to join the union as a defendant requires decertification.

■ Rule 23 requirements must be strictly applied in all class actions, including private actions under Title VII. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). In addition, all four requirements of Rule 23(a) must be met with respect to each subclass in the class action. *Paxton v. Union National Bank,* 688 F.2d 552, 559 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).

■ A fundamental requirement of representatives in a class action is that they must be members of the subclasses they seek to represent. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), *Craik,* 731 F.2d at 480 n. 18. The representatives must "possess the same interest and suffer the same injury" as their fellow class members. *East Texas Motor Freight,* 431 U.S. at 403, 97 S.Ct. at 1896 (quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)).

The eleven day trial produced evidence concerning a wide range of the Railroad's employment practices. The practices that are challenged on appeal, however, fall into four distinct categories: nonuniform disciplinary sanctions for violation of company rules; unwritten procedures and qualifications for promotion to low level managerial

positions as well as unannounced openings for such positions; forced promotions of firemen to engineers by means of a mandatory written examination; and unclear procedures to protect seniority in the event of furlough.

Roby's testimony reveals that he was only affected by the lack of clarity in the procedure required to protect his seniority after being furloughed. According to one of the collective bargaining agreements, a furloughed employee has fifteen days to "take service" in another job at the same terminal or else forfeit his seniority in the Railroad altogether. Roby did not "take service" in the manner dictated by the Railroad and consequently forfeited his seniority.

Roby also claims to have been affected by the Railroad's promotion policies. His testimony reveals, however, that he knew who to contact regarding promotions and that he was not interested in the positions available to him without a college and graduate degree, which he did not possess. Although Roby was once the subject of discipline, he does not claim that the whites involved were less severely disciplined.

Willingham and Gordon were affected by the forced promotion of firemen to engineers by means of a written examination. According to an agreement between the Railroad and the Brotherhood of Locomotive Engineers, all firemen are required to take a test to become engineers. Firemen are allowed to take the examination twice; if they do not pass either time, they are discharged. Both Gordon and Willingham failed the engineer's examination twice and were discharged.

Neither Gordon nor Willingham testified that they were interested in promotion to managerial positions; nor was either one the subject of discipline.

■ Because Appellants were not affected by the Railroad's promotion policies, they were not proper class representatives for those employees who are affected by these policies. *Walker v. World Tire Corp., Inc.,* 563 F.2d 918, 922 (8th Cir. 1977). Roby knew who to contact but was not interested in pursuing the jobs available to him at that time. Neither Gordon nor Willingham had any interest in being promoted. Gordon went so far as to state that he knew of no black discriminated against in respect to promotion.

■ Appellants claim that they are proper class representatives for all those who are discriminatorily discharged whether as a sanction for violation of company rules, for failing to protect seniority, or for failing the engineer's examination. However, the record is clear that a discharge for a rules violation is fundamentally different from the type of discharges Appellants suffered. A discharge due to a rules violation follows an investigation into whether the violation has occurred and into any mitigating circumstances. A discharge for failure to protect seniority or for failure of the engineer's examination does not involve an investigation primarily because there is no discretion in determining the result of such failure. Therefore, Appellants did not suffer the same injury as those who are charged with violating company rules and who are disciplined after an investigation.

■ The only subclasses Appellants could represent are those black persons who fail to "take service" in another job within fifteen days after a furlough and those black persons who fail the forced engineer's examination. The record reveals that only four black persons including Roby have failed to "take service" in another job within fifteen days and only three black persons including Gordon and Willingham have failed the engineer's examination. We cannot say that the district court abused its discretion in determining that these numbers fall short of meeting the numerosity requirement. *See Tate v. Weyerhaeuser Co.,* 723 F.2d 598, 609 (8th Cir.1983) (seven persons held not enough to meet numerosity requirement).

We conclude that the district court properly decertified the class because Appellants failed to satisfy Rule 23(a)'s requirements as to any of the four subclasses.

## INDIVIDUAL ACTIONS

Roby claims the district court committed error in not using the analysis outlined in *Craik*, 731 F.2d at 470–71, when evaluating his individual claim. In *Craik*, this court held that when both individual and class claims are presented in a disparate treatment case and the evidence shows a pattern or practice of discrimination, the district court must first analyze the class claims and if they are sustained, then the court must presume discrimination against the individual claimants.

■ The *Craik* presumption only applies if there are both class and individual claims to be considered. Since the district court properly decertified the class, Roby has no class proof to rely upon for the *Craik* presumption. *Id.* at 471 ("if we agre[e] that the class claims were properly rejected, [any error] would be harmless because in that case the individual plaintiffs would not be entitled to the burden-shifting presumption").

■ Roby additionally challenges the district court's finding that his forfeiture of seniority for failure to "take service" within fifteen days of his furlough was not the result of discrimination. The district court found that anyone, whites included, lost their seniority by failing to "take service" within fifteen days of a furlough. Our review here is limited by the clearly erroneous standard. *Bell v. Bolger*, 708 F.2d 1312, 1319 (8th Cir.1983) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). After reviewing the record we hold that this finding is not clearly erroneous.

■ Gordon and Willingham base their cases of discrimination on disparate impact. Although the district court analyzed their claims at times by citation to and discussion of disparate treatment cases, the court did make sufficient findings to dispose of the case on a disparate impact theory. In order for Gordon and Willingham to prevail on a disparate impact theory, they must show that the written examination has a. significant adverse impact on a protected group. *Connecticut v. Teal*, 457 U.S. 440, 446–47, 102 S.Ct. 2525, 2530–31, 73 L.Ed.2d 130 (1982); *Easley v. Anheuser-Busch Inc.*, 758 F.2d 251, 255 n. 7 (8th Cir.1985). Once they have made this showing, the Railroad must then prove that the examination is justified by business necessity. *Id.* Although the evidence of adverse impact on blacks was scant, the district court did not make a specific finding as to impact. The court did find, however, that the rules examination is critical to the safe operation of the Railroad. Thus, the Railroad met its burden of showing business necessity. Gordon and Willingham were free to show that the Railroad used the examination as a mere pretext to discriminate. *Teal*, 457 U.S. at 447, 102 S.Ct. at 2530; *Easley*, 758 F.2d at 255 n. 7. However, no pretext evidence was presented.

Finally, Appellants argue that the district court committed error by not permitting Jeffrey Trice to intervene in this action. Because Trice did not appeal the denial of his request for intervention, we decline to address this issue.

We affirm the district court's order decertifying the class and its judgment for the Railroad on the individual claims of employment discrimination.