James R. **LEVELS, et al., Plaintiffs,**

v.

**AKZO NOBEL SALT, INC., Defendant.**

No. 1:96–CV–1962.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 7, 1998.

David E. Roloff, Morris L. Hawk, Goldstein & Roloff, Cleveland, OH, for Plaintiffs.

Ronald J. James, John T. Meredith, Squire, Sanders & Dempsey, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

GWIN, District Judge.

On February 25, 1997, Plaintiffs moved this Court to maintain and certify this case as a class action [Doc. 37].[1] The Court denies the motion for the reasons that follow.

## I

On September 9, 1996, Plaintiffs, seven African–American employees of the Defendant AKZO Nobel filed a class action complaint against AKZO Nobel. Plaintiffs make claim under 42 U.S.C. § 1981 and 42 U.S.C. §§ 2000e *et seq.*

Plaintiffs allege that AKZO's supervisory employees create a hostile work environment for African–Americans by subjecting them to discriminatory workplace treatment and by actively participating in, or ignoring, various incidents of racism.[2]

The Plaintiffs are James R. Levels, L.J. Flowers, James Mays, Larry Taylor, Herman Coats, and Nathaniel Coats. Plaintiff Levels further claims Defendant AKZO Nobel retaliated against him for his filing of an EEOC charge concerning these matters. Plaintiffs seek to have this action certified as a class action as to Counts One (Hostile Work Environment) and Three (Intentional Discrimination) of the Complaint.

Defendant AKZO Nobel owned and operated a salt mine in Cleveland, Ohio.[3] The mine extends underground from Cleveland for miles through tunnels, many under Lake Erie. Defendant AKZO Nobel employed about 210 hourly employees at the Cleveland mine. Of the 210 hourly employees, 31 were African–Americans. All hourly employees were production and maintenance employees and were represented by the International Brotherhood of Teamsters.[4]

Approximately 59 bargaining unit employees, including 11 African–Americans, worked on the surface under one set of supervisors. The remaining hourly employees, including 20 African–Americans, worked in mine production and maintenance responsibilities under a different set of supervisors.

During fall and winter, Defendant AKZO Nobel employed seasonal laborers in entry level production jobs. In the Winter of 1997, there were 12 seasonal employees. These seasonal employees worked on the surface of the mine.

Plaintiffs are seven African–American male former employees of AKZO Nobel's Cleveland facility. All seven were regular full-time production employees represented by the Teamsters and are bargaining unit members. Plaintiff Levels is an electrician and is the only Plaintiff who worked in the mine. The remaining six Plaintiffs were principally surface employees. The Plaintiffs were employed in top rate classifications and most had more than 20 years of seniority.

Plaintiffs' Complaint says they had been subject to written and verbal racial slurs while employed at Defendant AKZO Nobel.

1. Plaintiffs seek certification of a class consisting of all African–Americans who have worked at AKZO Nobel Salt Inc. at any time since September 27, 1994 or will work at AKZO Nobel Salt Inc. in the future and who have been, are, or will be, either members of the bargaining unit or seasonal employees at that facility.

2. In *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Court held that Title VII's prohibition against discrimination with respect to "terms, conditions, or privileges of employment" based on race, color, religion, sex, or national origin is not limited to economic or tangible discrimination, but extends to entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in discriminatorily hostile or abusive environment.

3. On May 1, 1997, Defendant AKZO Nobel sold its Cleveland facility to Cargill, Inc., a privately owned company with no apparent relationship to Defendant AKZO Nobel. The transaction was an asset sale.

4. Defendant AKZO Nobel and the Teamsters had negotiated a collective bargaining agreement that · controlled the terms and conditions of employment of the regular full-time production and maintenance employees.

They seek equitable damages and compensatory damages, punitive damages, attorneys' fees and costs.

Plaintiffs request class certification as to Counts One (Hostile Work Environment, Title VII) and Three (Intentional Discrimination, Section 1981) of their Amended Class Action Complaint. Count Three is limited to the same hostile work environment allegations as Count One.

Only two Plaintiffs, Mr. Levels and Mr. Taylor, filed charges with the Ohio Civil Rights Commission ("OCRC"), the Equal Employment Opportunity Commission ("EEOC") or any other administrative agency.[5]

Plaintiff Levels also alleges that Defendant AKZO Nobel retaliated against him for filing an EEOC charge. Plaintiff Levels' EEOC charge alleged only harassment. Neither Mr. Levels' EEOC charge nor the Complaint allege race-based discrimination in connection with hiring.

Plaintiffs seek to represent a class of African–Americans that includes any future and seasonal employees, although none of the Plaintiffs are either future or seasonal employees.

■ Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment: *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Under *Harris,* conduct that is merely offensive cannot support an action while conduct need not cause a tangible psychological injury to support an action. Title VII bars conduct that would reasonably be perceived, and is perceived, as hostile or abusive.

## II

■ Plaintiffs seek certification of this action as a class action.[6] Rule 23(a) establishes four prerequisites to class certification: the class must be so numerous that "joinder of all members is impracticable;" there must be

---

**5.** Plaintiff Taylor filed his EEOC charge in 1992. It was processed by the Ohio Civil Rights Commission, settled and dismissed. The EEOC accepted the Ohio Civil Rights Commission's resolution and issued a Notice of Right to Sue on May 10, 1993. Taylor did not file this suit within 90 days after he received his Notice of Right to Sue, 42 U.S.C. § 2000e–5(f)(1). Mr. Taylor's discrimination grievance, an individual job bid issue, arose from the same situation resolved by the Ohio Civil Rights Commission, settlement.

**6.** Fed.R.Civ.P. 23, provides in pertinent part:

Rule 23. Class Actions

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

"questions of law or fact common to the class;" the claims of the representative party must be "typical" of those of the class; and the representative party must "fairly and adequately protect the interests of the class." The commonality, typicality, and adequacy-of-representation requirements are related. Each forces the judge to consider whether the claims of the named plaintiff are sufficiently similar to the claims of the absent class members to make the plaintiff an adequate representative of the class's interests. *See* Note, *Certifying Classes and Subclasses in Title VII Suits*, 99 Harv. L.Rev. 619 (1986).

The Supreme Court requires district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1078–79 (6th Cir.1996). *Kutschbach v. Davies*, 885 F.Supp. 1079 (S.D.Ohio, 1995)(proposed class representative must establish that all requirements for certification of class are satisfied with respect to putative class for certification to be proper.); *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.1976).

An individual litigant seeking to maintain a class action under Title VII must meet "the prerequisites of numerosity, commonality, typicality, and adequacy of representation" specified in Rule 23(a). *General Tel. Co. of the Northwest v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980).

### III

█ Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Rule 23's numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations. *Id.* In *In re American Medical Systems, Inc.*, the Sixth Circuit noted that the numerosity requirement "of Rule 23(a)(1) requires that the class be 'so numerous that joinder of all members is impracticable.' 'The reason for [the impracticability] requirement is obvious. Only when joinder is im-

practicable is there a need for a class action device.' " 75 F.3d at 1079 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, S 3.01, at 3–4 (3d ed.1992)).

There is no strict numerical test for determining impracticability of joinder. Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. at 330, 100 S.Ct. at 1706.

In determining whether class is so numerous that joinder of all members is impracticable, the basic issue concerns the practicability of joinder. The practicability of joinder depends on the size of class, the ease of identifying its members and determining their addresses, the ability to make service and their geographic dispersion. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315 (S.D.Fla.1996).

"Impracticable" does not mean "impossible"; the representatives only need show that it is extremely difficult or inconvenient to join all the members of the class. *See, e.g. Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964). Numbers alone are not determinative of this question, which turns on the impracticability of joinder. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D.Colo.1990). This determination must be made on a case-by-case basis and depends upon the specific facts and circumstances presented. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319–20 (9th Cir.), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982), *amended by*, 726 F.2d 1366 (9th Cir.1984).

There is no magic number for determining when too many parties make joinder impracticable. Joinder of a small group may prove impracticable, while joinder of a large group may be more possible. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). Joinder is generally considered more practicable when all members of the class are from the same geographic area. Where class members may be

easily identified, joinder is also more practicable. Because geographical dispersion adds to difficulty and impracticability of joinder, it is a factor to be weighed in favor of class certification. *Schreiber v. National Collegiate Athletic Ass'n*, 167 F.R.D. 169 (D.Kan. 1996). As a general rule, the plaintiff class should be so numerous so as to make it impracticable to bring them all before court. Impracticable does not mean impossible, as plaintiffs need only demonstrate that it is extremely inconvenient or difficult to join members of the class. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009 (W.D.Mich.1987).

Plaintiffs proposed class has only 32 employees as of the date that Defendant AKZO Nobel sold its plant, April 30, 1997. As described below, AKZO Nobel divides employees into those with underground work assignments and those with surface work assignments. The proposed class has fewer than 20 employees remaining in each group.

Here, Plaintiffs fail to show that joinder is impractical. *See Frazier v. Consolidated Rail Corp.*, 851 F.2d 1447 (D.C.Cir.1988)(district court properly refused to certify employment discrimination plaintiffs as representatives of a class, based on small number of prospective class and subclass members which district court found to number 28, but also on more important consideration that plaintiffs failed to carry burden of demonstrating that joinder was impracticable).

In *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980), *cert. denied.* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981), the Court held that where only 31 persons could possibly have been affected by employer's English-only rule, their identity and addresses were readily ascertainable, and they all lived in compact geographical area, the plaintiff had not shown right to maintain a class action. The Court found that joinder was practicable. *See also, Crawford v. Western Elec. Co., Inc.*, 614 F.2d 1300 (5th Cir.1980)(a

class of 34 cannot be said to satisfy the class action rule's numerosity requirement as a matter of law).

More important than numbers, there is no showing here that joinder is not feasible, especially given that all class employees reside in the Cleveland area. Plaintiffs fail to make a showing to satisfy Rule 23(a)(1)'s numerosity requirements.

## IV

■ Plaintiffs must show "questions of law or fact common to the class," under Fed.R.Civ.P. 23. The existence of common questions of law or fact is a prerequisite to maintenance of a class action. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Falcon*, 457 U.S. at 156, 102 S.Ct. at 2370 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977).)

A "common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). There must be, at least, one "question[ ] of law or fact common to the class." Fed.R.Civ.P. 23(a)(2); *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 622 (N.D.Ill. 1989).

The Court finds that plaintiffs do not adequately demonstrate that there are questions of law or fact common to the class. A class action will not be defeated solely because of some factual variations among class members' grievances. *See Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).[7]

---

7. In Wright & Miller, the authors described this rule:

Because the question of the discriminatory character of defendant's conduct is basic to actions of this type, the fact that the individual class members may have suffered different effects from the alleged discrimination is immaterial for purposes of this prerequisite. As was stated by one court [*Hall v. Werthan Bag Corp.*, 251 F.Supp. 184, 186 (D.C.Tenn.1966)]:

[A]lthough the actual effects of a discriminatory policy may thus vary throughout the class, the existence of the discriminatory policy threatens the entire class. And whether the

Still, the Plaintiffs must show a commonality of interest with the class. Plaintiffs fail to make this showing. Here, Plaintiffs seek to represent "all African–Americans who have worked at AKZO Nobel Salt Inc. at any time since September 27, 1994 or will work at AKZO Nobel Salt Inc. in the future and who have been, are, or will be, either members of the bargaining unit or seasonal employees at that facility."

On May 1, 1997, Defendant AKZO Nobel sold its Cleveland facility to Cargill, Inc. Cargill, Inc. is a corporation with no relationship whatsoever to AKZO. Defendant AKZO Nobel sold the facility in an asset sale. As such, Cargill, Inc. claims no obligation to observe AKZO Nobel's collective bargaining agreement or to hire former AKZO Nobel employees.

Cargill, Inc. has not hired all the Plaintiffs.[8] Cargill, Inc. has not hired some of the managers and supervisors involved in this action. Others have been reassigned to different positions. The union contract which governed the terms and conditions of employment for nearly three decades, is no longer being observed, and thus Cargill's policies and practices are materially different than AKZO's. Even when Defendant AKZO Nobel operated the Cleveland facility, the named Plaintiffs were full-time permanent employees. None of them were employed as seasonal employees.

Even if this sale had not taken place, circumstances of the employment hinder any showing of commonality. This lack of commonality is exacerbated by the separate conditions within the mine and on the surface. A certifiable class claim must arise out of the same legal or remedial theory. Plaintiffs' claims appear to relate to individualized claims of discrimination. Here, Plaintiffs fail to show that there is a common nucleus of operative facts among the plaintiffs and others. Defendant AKZO Nobel divides its work into two distinct areas. AKZO Nobel employs individuals whose work centers at underground mining. AKZO Nobel employs others who work on the surface of the mine. Plaintiffs make different allegations concerning work conditions at each location. With regard to surface work, Plaintiffs complain about discriminatory harassment by fellow employees. With regard to underground work, Plaintiffs complain that supervisors participated in racial harassment or acquiesced in harassment occurring in their presence.

All plaintiffs except one have worked on the surface of the mine for at least the last five years. One plaintiff has worked almost exclusively underground. None of the plaintiffs who work on the surface regularly venture into the mine or have regular contact with any mine employees. Surface plaintiffs have contact with mine employees only before and after the work day.

The mine supervisors do not supervise the surface employees. Supervisors do not regularly switch between surface work and mine work. The parties have little commonality of experience. For this sufficient reason, Plaintiffs' motion for class certification must be denied.

**V**

■ Under Fed.R.Civ.P. 23, Plaintiffs must show that their claims are typical of class claims. Rule 23(a)(3) assures that the claims of the representative party are similar enough to the claims of the class so that the representative will adequately represent all members of the class. *See Hiatt v. County of Adams, Ohio*, 155 F.R.D. 605 (S.D.Ohio 1994) (any inquiry into typicality under Rule 23(a)(3) requires a comparison of the claims or defenses of the representative with the claims or defenses of the class).

Damoclean threat of a racially discriminatory policy hangs over the racial class is a question of fact common to all the members of the class.

Of course, the class members all must be victims of the discriminatory policy or the required common question will not be found to exist. As discussed elsewhere, this concern over the impact of the challenged conduct also is relevant in determining whether the representatives are members of the class and have standing to bring the suit. 7A Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc.2d § 1763.

8. Cargill, Inc. has hired Plaintiffs Flowers, Campbell, H. Coats and Mays.

Since the burden is on the plaintiff to establish the prerequisites of Rule 23, "... it is not unreasonable to require the plaintiff to establish the existence of a class as preliminary to the court's comparison of claims and defenses." *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 270 (10th Cir.1975).

In *Falcon,* the Supreme Court described this rule:

> We have repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." 457 U.S. at 156, 102 S.Ct. at 2370 (citing *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977)).

*See also Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)(to have standing to sue as a class representative, it is essential that plaintiff be a party of that class which means he must possess the same interest and suffer the same injury shared by all members of class he represents); *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976)(to be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.)

The typicality requirement insures that the named plaintiff is sufficiently similar to the claims of the absent class members to make the plaintiff an adequate representative of the class's interests. Racial discrimination in employment has an uncomfortable fit with the typicality requirement. Persons are harmed only by virtue of their class membership. Nevertheless, the harm and circumstances of the discrimination may vary widely. This is especially true for harassment claims.

In *Falcon,* the Supreme Court reversed a class certification approved by the Fifth Circuit. In doing so, the Court's opinion expressed concern about the lack of unity of interest within the class, even a racial class.[9]

The Court finds that Plaintiffs' claims are not sufficiently typical of the claims of class members. *See Eastland v. Tennessee Valley Auth.,* 704 F.2d 613, 617–18 (11th Cir.1983) (barring nonmanagerial white-collar employee from suing on behalf of managerial staff), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984).

As related, the named Plaintiffs allege they were subjected to a hostile work environment because of their race. Plaintiffs make no claim that they suffered discriminatory hiring practices based on race. In this regard, Plaintiffs' claims are not typical of the proposed class members who suffered discrimination in hiring.

As related, some Plaintiffs' work centers at underground mining. Other Plaintiffs work on the surface of the mine. In these positions, they are exposed to different co-employees, different supervisors, and different working conditions. Plaintiffs fail to show that their claims are typical of the claims of the class.

---

**9.** In *Falcon,* the Court described this:

"[S]uits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs", and that "[c]ommon questions of law or fact are typically present." *East Texas Motor Freight System Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977). In the same breath, however, we reiterated that "careful attention to the requirements of Fed. Rule Civ.P. 23 remains nonetheless indispensable" and that the "mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." *Id.,* at 405–06, 97 S.Ct. at 1898.

We cannot disagree with the proposition underlying the across-the-board rule-that racial discrimination is by definition class discrimination. But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. 457 U.S. at 157, 102 S.Ct. at 2370–71 (footnotes omitted).

## VI

Plaintiffs must show that they will fairly and adequately protect the interests of the class. The adequacy of class representation is initially measured by two standards: first, class counsel must be qualified, experienced and generally able to conduct the litigation; second, class members must not have interests that are antagonistic to one another. *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285 (2nd Cir.1992), *cert. denied,* 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993).

Defendant AKZO Nobel says that six of the Plaintiffs have no jurisdiction to bring this action. AKZO Nobel says these employees never filed a timely EEOC charge. Defendant AKZO Nobel says these employees never received an EEOC right to sue letter after which they could file suit within 90 days.

Where a proposed class representative is subject to several unique defenses a court should use caution in finding that class member will adequately represent the class. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176 (2nd Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991); *Koos v. First Nat. Bank of Peoria,* 496 F.2d 1162 (7th Cir.1974)(where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, the named plaintiff is not a proper class representative.); *Hardin v. Harshbarger,* 814 F.Supp. 703, 707 (N.D.Ill.1993)("Further, it is settled law that the presence of even an arguable defense against the named plaintiff that is not applicable to the proposed class, or in this case subclass, can vitiate the adequacy of named plaintiff's representation").

Also, the named class representative must himself satisfy all jurisdictional prerequisites before a class action can go forward. *Selman v. Harvard Medical School,* 494 F.Supp. 603 (S.D.N.Y.1980), *aff'd.,* 636 F.2d 1204 (2nd Cir.1980). Some representatives have potential problems meeting the jurisdictional requirements for an action under 42 U.S.C. § 2000e–5(f)(3).[10] This also diminishes the Plaintiffs ability to fairly and adequately represent the class. Plaintiffs fail to make a showing that they will fairly and adequately protect the interests of the class.

## VII

To sustain a class action, Plaintiffs must also make the showing required by Fed.R.Civ.P. 23(b). To carry this burden, Plaintiffs must show that the action is maintainable under Rule 23(b)(1), (2), or (3).[11]

---

**10.** Employee alleging discrimination must normally bring charge within 300 days of injury and, thus, plaintiff cannot normally recover for any employment discrimination that happens more than 300 days before bringing charge, even though events occurring more than 300 days before date charge was brought may be investigated. 42 U.S.C.A. § 2000e–5. *E.E.O.C. v. Ford Motor Credit Co.,* 26 F.3d 44 (6th Cir.1994).

**11.** Fed.R.Civ.P. 23(b) says:

(B) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual ' members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(1) covers cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class," Fed.R.Civ.P. 23(b)(1)(A), or would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests," Fed. Rule Civ.P. 23(b)(1)(B). Rule 23(b)(1)(B) includes "limited fund" cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims.

The Plaintiffs make claim for a hostile work environment. Because the conduct each Plaintiff complains of varies with individual circumstances, the Court finds no risk of inconsistent adjudications, Fed.R.Civ.P. 23(b)(1)(A). Even less likely is any adjudication that would dispose of the claims of others or impair the ability of other plaintiffs to protect their interest, Fed.R.Civ.P. 23(b)(1)(B). The Court finds no showing of any right to proceed under Fed.R.Civ.P. 23(b)(1).

Where right to maintain a class action under Fed.R.Civ.P. 23(a) is shown, Fed. R.Civ.P. 23(b)(2) allows a class action if the other party has acted or refused to act on grounds generally applicable to the class that make final injunctive relief or corresponding declaratory relief appropriate. Rule 23(b)(2) permits class actions for declaratory or injunctive relief.

But here, Defendant AKZO Nobel has sold the plant which would be controlled by any injunctive relief. Since AKZO Nobel no longer owns the Cleveland mine, it is in no position to provide any injunctive relief. The case becomes one for monetary damages, and the class cannot be certified under Rule 23(b)(2). See *Kurczi v. Eli Lilly Co.*, 160 F.R.D. 667, 679 (N.D.Ohio 1995) (since plaintiffs made no demand for injunctive or declaratory relief, "the provisions of Rule 23(b)(2) [were] wholly and manifestly inapplicable").

Class actions may be maintained under Rule 23(b)(2) only in those cases where the primary relief sought is injunctive or declaratory relief. See Fed.R.Civ.P. 23 Advisory Committee Notes (Rule 23(b)(2) "does not extend to cases in which the appropriate final relief related exclusively or predominately to money damages").

Therefore, as to AKZO, this action is one solely for monetary damages, and Plaintiffs must satisfy the Rule 23(b)(3) criteria, and show that common questions predominate over individual issues.[12] The Court finds that common questions do not predominate over individual issues. The Court is influenced by the nature of the conduct complained of: individual harassment, by the lack of similarity of persons who may have perpetrated the harassment and by the lack of similarity of damages involved.

For the foregoing reasons, the Court finds that Plaintiffs have failed to establish their right to bring this class action under Fed. R.Civ.P. 23. The Court denies Plaintiffs' motion to certify this as a class action.

IT IS SO ORDERED.

---

**12.** Fed.R.Civ.P. Rule 23(b)(3) describes the factors to be considered in making this determination:

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.